BROGDEN, J., dissents.
The prisoner, indicted for the murder of W. J. Carter, was convicted of murder in the first degree, and from judgment of death by electrocution he appealed, assigning error. He neither testified nor introduced any witnesses. The evidence for the State tends to show the facts to be as follows:
The deceased was 61 years old. He conducted a mercantile business near a hard-surfaced highway 3 miles south of Leaksville, the direction of the highway being north and south. Parallel with the highway was a storeroom (occupied by the deceased) the length of which was about 30 feet and the width about 17 feet. The store porch was about 20 feet from the road. In the front part of the building were two doors — a single door on the north side and a double door near the center. Outside there was an oil pump near the south edge of the porch; another just north of the double door; and another at a break in the level of the porch. There were also lights outside; one of them would be over an automobile standing in front of the door. Back of the store, separated by a partition were 3 rooms occupied by the deceased and his family as a living apartment. Between the store and the first of these rooms was a screen door, the lower part of which, about five feet, was covered with a curtain; above the curtain there was an open space through which a person in the room could look into the storeroom.
On 30 April, 1932, between 9 and 10 o'clock at night, while her husband was closing the windows, Mrs. Carter, who was then in the room adjoining the one just referred to, heard a car drive up in front of the store. At this time there were two lights outside and two inside the store. She heard some one say "Stick `em up," and immediately a volley of shots was fired. Seven or eight bullets entered the body of the deceased; his death was instantaneous.
Mrs. Carter rushed through the screen door into the store. Looking over the curtain as she passed she saw a man inside the store door looking at her husband as the latter made his last step behind the stove. The *Page 403 
man who had done the shooting got into the automobile on the right side of the seat, the motor yet running, and quickly started in the direction of Leaksville.
Mrs. Carter identified the prisoner as the man who had killed her husband. She also described the car.
There was evidence that only a few hours before the deceased had been shot the defendant had been seen near Danville in a car the appearance of which was similar to that of the car seen by Mrs. Carter at the store; that it had been seen by others; and that it had subsequently been repainted.
Reeves Cooper, an uncle of the prisoner by marriage, testified that on 8 May, 1932, the prisoner had come to his house at about 9 o'clock at night and had left a car of the description given by Mrs. Carter, except as to the color, which the State contended, had been changed by repainting. That night an officer took the car into his possession and found in it the following articles: A sawed-off shot gun, a brace and bit, a chisel, a flat iron, a wrench, a square and block, hammers, files, wire cutters, gun shells, overalls, shirts, and North Carolina, Virginia, and Kentucky license plates. The prisoner was arrested in Cincinnati, Ohio, in the month of June.
The prisoner neither testified nor introduced any witness, and at the close of the evidence offered by the State he moved to dismiss the action as in case of nonsuit. C. S., 4643. The ground upon which the motion was made is the insufficiency of the testimony tending to identify the prisoner as the man who shot and killed the deceased; and the asserted insufficiency is based upon the assumption that the testimony of identity, as given by Mrs. Carter, is the product of imagination in part and in part of auto-suggestion. Whence it is argued that this Court should recognize the failure of the jury to perceive the fallacy of the testimony and should hold as a matter of law that the evidence is insufficient to sustain the verdict — "otherwise," it is said, "a great and irreparable injury will be done."
Mrs. Carter, the wife of the deceased, was the only witness who attempted to identify the assailant. On this point she was minute, as will appear from the following summary of her testimony: "As I went through the screen door I looked over the curtain and saw a man standing there just a step from the door, inside the door. He was looking at my husband . . . I asked him what he meant. He was about seven *Page 404 
feet from me . . . My husband was standing behind the stove. That was about 8 or 10 feet, I guess, from where I was. The lights were burning at that time . . . The automobile was standing right in front of the door. I think the lights of the automobile were burning at the time. The motor was running; I saw into the car; another man was sitting right under the wheel. It was a roadster, a dark bodied car with a light top, built for speed. So far as I know, I had never before seen the man that was in the car . . . As to whether I had seen the man who was standing in the door before that time, I was not acquainted with him, but I think I had seen him, most sure I had. I have seen him since that time. I saw him in Greensboro and I see him here, here in the courthouse. I see him here today; there he sits, right over there . . . His name is Clay Fogleman. No one else was in the room at the time I got there except him and my husband. Clay Fogleman, at the time I came in the room had a gun in his right hand; I can't describe the gun; it was a pistol . . . Clay Fogleman went to the automobile; he got in the automobile . . . He got in on the right side . . . When I heard the shooting I went in as quickly as I could. My husband was on my mind. The first man I saw was that man sitting right there at the table. I saw him before I came out of the bedroom over the screen door. As to whether I was asked about the identification of the prisoner at the preliminary hearing, I told you I identified him . . . I was going to my husband all the time as fast as I could. I was looking at both; looking at the man standing there with the gun and looking at my husband, also. . . . When the man went out of the door his back was to me . . . I got a good right side view of his face . . . I saw enough to know this was the man. Yes, I saw the right side of his face and the outline of his body; I saw enough to know this is the man. . . . I knew I was going (to Greensboro) to identify Fogleman; I knew they said he was there. I was not shown any other prisoner except Fogleman. I didn't have to be shown any other one; he was the man I saw that night standing in the door; I am positive."
It may be doubted whether our system of jurisprudence contains any principle more strictly defined than that which separates the functions of the courts from those of the jury. According to a custom that formerly prevailed evidence was submitted to a jury probably as a supplement to their own knowledge; but in a later period the custom was abandoned, and the jury assumed the character, since maintained, of a determining agency whose sole function is "to give a true verdict according to the evidence." The discharge of this duty implies the necessity of examining the testimony, finding the facts, and applying the law to the facts as found. *Page 405 
The judge lays down and explains the law, and the jury is under obligation to accept and apply the law as thus explained. The determination of the facts is the exclusive province of the jury; the elucidation of the law is the exclusive province of the judge. The jury cannot exercise the prerogatives of the judge; the judge cannot exercise the prerogatives of the jury. The two are distinct, and neither has the right to invade the field of the other. S. v. Walker, 4 N.C. 662; S. v. Hildreth, 31 N.C. 429;S. v. Matthews, 78 N.C. 523; S. v. Murphrey, 186 N.C. 113; S. v.Lawrence, 196 N.C. 562. Not only is the judge forbidden by C. S., 564 to "give an opinion whether a fact is fully or sufficiently proven" (S. v.Windley, 178 N.C. 670; S. v. Sullivan, 193 N.C. 754); he is prohibited from finding the determinative facts in a criminal action even by consent of the defendant or his counsel. S. v. Allen, 166 N.C. 265. He may grant relief from an unfortunate result by setting aside the verdict; but in the present case the trial judge denied the prisoner's motion to vacate the verdict and award a new trial. Evidently he saw no satisfactory reason for discrediting the verdict which was based principally on the testimony of Mrs. Carter. Indeed, her identification of the prisoner was clear, direct, and positive. We are aware of no recognized theory upon which the trial judge should have assumed, or upon which this Court should now assume, as a matter of law that the testimony attacked by the prisoner was either imaginary or fallacious.
There was no error in the court's denial of the motion to dismiss the action.
In addressing the jury, counsel for the private prosecution used language indicating that the wife of the prisoner knew what clothes the prisoner had worn on the night of the homicide, thereby intimating, it is contended, that she had not testified in his behalf. Attention has frequently been called to the fact that remarks of this character justify the award of a new trial in case of conviction unless the error is cured by the prompt action of the court. Upon objection by the prisoner, the court stopped the argument, directed the attorney to desist, and instructed the jury not to be influenced by the remarks to which objection had been made. In his charge his Honor specifically instructed the jury to exclude from their minds everything except the evidence and the law as declared by the court.
The same counsel suggested, also, that the prisoner had not testified in his own behalf by saying to the jury that the prisoner knew whether he had been in the automobile below the Dix home; but again the court promptly interposed. It is admitted in the prisoner's brief that the argument was stopped; and thereafter, at least three or four times in the charge, the court plainly instructed the jury not to permit the *Page 406 
prisoner's failure to testify to prejudice their minds against him; that he was presumed to be innocent; and that the State had the burden of proving his guilt beyond a reasonable doubt.
According to the decisions of this Court the error of counsel in referring to the prisoner's declining to testify was cured by the immediate action of the court and the emphatic and repeated instruction given to the jury. S. v. Harrison, 145 N.C. 408. In this case it is said: "We undertake to correct the errors of the judge and not those committed by attorneys. Their errors are to be corrected by the trial judge, and when he fails in his duty it becomes a ground of exception." So, also, as to the intimation that the prisoner's wife had not testified in his behalf. The court instantly suspended the argument and afterwards instructed the jury to disregard everything but the evidence and the law. The course thus taken conforms to the principle laid down in S. v. Spivey, 151 N.C. 676. The comment of counsel was improper, but as said in the case last cited his Honor fully corrected the error.
On the evening of 8 May, at about 9 o'clock, the prisoner went to the home of Reeves Cooper and put his car in the shed. He left it there and immediately went away; he did not return. That night the car was seized by an officer. The description of it agreed in details with that of the car that had been stopped in front of the store on the evening of the homicide. Meanwhile no change had been made in its contents. The officer found in it the gun, the shells, and the implements above described. He testified to this effect and the prisoner excepted.
The exception is without merit. Evidence of this character is admissible on the principle that it tends to show a design or plan. The existence of such design or plan may be proved circumstantially as well as by direct utterance. In Wigmore on Evidence, it is said that in the production of such proof two sorts of circumstantial evidence are available: (1) Conduct as indicating the inward existence of a design; (2) prior or subsequent existence of the design, as indicating its existence at the time in question. Accordingly, "the acquisition or possession of instruments, tools, or other means of doing the act is admissible as a significant circumstance; the possession signifies a probable design to use; the instruments need not be such as are entirely appropriate, nor such as were actually put in use." Vol. 1, secs. 88, 237, 238. Bishop says that it is competent to prove the possession of tools by a person charged with crime, even those not adapted to the crime if found with others which are adapted to its commission; and, according to Underhill, all the details of the finding may be proved, it being immaterial that the tools found were not adapted to the commission of a specific act. 3 Bishop's New Crim. Procedure, sec. 151; Underhill's Crim. Evidence, sec. 570. *Page 407 
If the gun, the shells, and the several implements in the prisoner's car had been discovered immediately after the homicide, evidence of the tact would unquestionably have been competent; and under the principles stated above the discovery a few days afterwards is not so remote as to impair its competency, the probative force of which was submitted to the jury.
These significant facts should be kept in view: The prisoner owned the car; some of the tools were suitable for use in burglary; the gun and shells, for use in burglary or robbery. A difference in the use to which the various articles were adapted does not preclude the admission of proof that they were in the prisoner's possession.
The indictment contains two counts, the first charging the essential facts of murder as required by C. S., 4614, the other charging murder committed in the perpetration of or in the attempt to perpetrate robbery. The prisoner excepted to an instruction referring to murder committed in the perpetration of robbery "or other felony." The first count in the indictment is sufficient; it contains "every averment necessary to be made." S. v. Arnold, 107 N.C. 861; S. v. R. R., 125 N.C. 666. The instruction complained of was relevant upon the matters involved in the first count.
We have considered the prisoner's exceptions with care, and find no error in the trial. In no view of the evidence was there any provocation on the part of the deceased, who was ruthlessly slain while in the prosecution of his daily task. The doctrine of manslaughter was eliminated, the question being whether the prisoner was guilty of murder in the first or second degree, or not guilty.
No error.
BROGDEN, J., dissents.