## STATE v. LEE STONE.

(Filed 22 September, 1954.)

**1. Rape § 13—**

Where defendant is convicted of an assault with intent to commit rape, his further conviction of an assault on a female will be treated as surplusage as included in the graver offense.

**2. Rape § 11: Incest § 2—**

Evidence in this case *held* sufficient to overrule nonsuit and sustain conviction of assault with intent to commit rape on a female child under the age of 12 years and of incest.

**3. Criminal Law § 32a—**

When the State relies on circumstantial evidence, all facts and circumstances forming a link in the chain of proof and which tend to prove the facts sought to be inferred as a reasonable and logical deduction are competent, but evidence of facts or circumstances which are equally consistent with the existence or nonexistence of the fact sought to be inferred is incompetent.

**4. Same: Rape § 10: Incest § 2—**

Defendant was charged with carnal knowledge of a female child under the age of 12 years, with carnal knowledge of a female child over the age of 12 and under the age of 16, and with incest. *Held:* The finding of prophylactic rubbers on the person of defendant when he was arrested some seven months after the last act of intercourse took place according to the evidence, and some three and one-half years after the prosecuting witness became 12 years of age, does not tend to prove defendant's guilt of the offenses charged, and the admission of such evidence over defendant's objection constitutes reversible error.

APPEAL by defendant from *Clarkson, J.,* January Criminal Term 1954, ROCKINGHAM Superior Court.

The grand jury at the May Term, 1953, returned against the defendant two bills of indictment. The first bill contained one count. It charged that on the ...... day of June, 1949, the defendant, a male person over the age of 18 years, had carnal knowledge of a female child under the age of 12 years. The other bill contained two counts. The first charged the defendant with incest. The second charged the carnal knowledge of a female over the age of 12 and under the age of 16, with the other necessary averments. It is charged that the offenses in the second indictment

STATE v. STONE.

occurred on 15 August, 1952. The complaining witness is the daughter of the defendant.

At the time of arraignment, the solicitor announced in open court that he would not ask for a verdict for the capital offense of rape, but would ask for a verdict of assault with intent to commit rape or assault on a female. Whereupon the bills were consolidated for the purpose of trial. The jury returned the following verdict:

Guilty of incest.

Not guilty of carnal knowledge of a virtuous female over 12 and under 16 years.

Guilty of assault with intent to commit rape.

Guilty of an assault on a female.

It was the judgment of the court that defendant be confined in the State's prison for not less than 18 nor more than 24 months, from which he appealed.

*Attorney-General McMullan, Assistant Attorney-General Moody, and William Mayo, Member of Staff, for the State.*
*P. W. Glidewell, Sr., for defendant, appellant.*

HIGGINS, J. The conviction for an assault on a female may be treated as surplusage. This is a lesser offense included in the charge of assault with intent to commit rape. A conviction of an assault on a female could only be sustained, provided the jury acquitted of the greater offense. The conviction on the other counts would, of course, sustain the judgment.

As disclosed in the record, the principal State's witness told a story involving her father in sex crimes with her, beginning when she was nine years old and continuing until 15 August, 1952. On 15 August, 1952, the defendant and his wife were taking the witness to task for keeping company with a married man, whereupon a fight took place in which she testified the defendant pulled her hair and she kicked him. She immediately left home, not to return. At that time she was 15 years old. Immediately after she left home on 15 August, 1952, she told a married sister and her sister's husband of her father's conduct toward her. In corroboration, they testified for the State as to what she had told them. The defendant testified in his own behalf, entering a complete denial. The wife and other members of the family testified in his behalf, corroborating him, and in part contradicting the daughter's story. Eight neighbors testified to the defendant's good character.

The story told by the principal State's witness is lurid in some, but vague in other details. She testified on some occasions her father used rubbers, others he did not. While the story is not altogether free from suspicion, yet it is sufficient to survive the challenge interposed by defend-

ant's motion for judgment as of nonsuit at the close of the State's evidence and renewed at the close of all the evidence.

The defendant was arrested on 16 March, 1953, just seven months after the State's witness left home, and, according to her story, all acts covered by the charges in the indictments had ceased. At the time of arrest the defendant was at work near his home. In the search incident to the arrest the officers took from his pocket a billfold. In the flap to this billfold the officers found two prophylactic rubbers. These they sealed in an envelope and made the following notation thereon: "Lee Stone— taken from Lee Stone's wallet 3-16-53 in the presence of Allen and Lillard." The prophylactics, together with the envelope and notation, were introduced in evidence, over the defendant's objection. The admissibility of this evidence is determinative of this appeal.

In circumstantial or indirect evidence, of which that offered is an example, it is often difficult to draw the line separating that which is admissible and that which is not. There is a twilight zone between circumstances that are clearly admissible and those clearly not admissible. It is in this category that the courts have difficulty. As said by *Justice Allen* of this Court in the case of *Bank v. Stack,* 179 N.C. 514, 103 S.E. 6, "The relevancy of evidence is frequently difficult to determine because men's minds are so constituted that a circumstance which impresses one as having an important bearing on a controverted issue appears to another to have no probative value." The rule is stated by Greenleaf (1 Greenleaf, Evidence, sec. 51a), "It is not necessary that the evidence should bear directly on the issue. It is admissible *if it tends to prove the issue* or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it."

Taylor (1 Taylor, Evidence, sec. 316), in stating the rule, says: "While he (the judge) shall reject as too remote every fact which merely furnishes a forceful analogy, or a conjectural inference, he may admit as relevant the evidence of all those matters which shed a real, though perhaps an indirect and feeble light on the question in issue."

In the case of *S. v. Plyler,* 153 N.C. 630, 69 S.E. 269, *Justice Brown* states the rule: "Where the particular fact sought to be proved is equally consistent with the existence or nonexistence of the fact sought to be inferred from it, the evidence can raise no presumption either way, and should be excluded." *S. v. Vinson,* 63 N.C. 335; *S. v. Brantley,* 84 N.C. 766.

In the case of *S. v. Brantley, supra,* after discussing the necessity for the use of circumstantial evidence and the dangers incident to such use, the Court said: "Among other hazards and inconveniences it was found that to allow evidence to be given touching every collateral matter that could be supposed, however remotely, to throw any light upon the main

fact sought to be established, had the effect to render trials too complicated and to confuse and mislead the juries, and at the same time to surprise the party on trial who could not come prepared to disprove every possible circumstance, but only such as he might suppose to be germane and material. And therefore the main rule was adopted of restricting the inquiry to such facts as, though collateral to the matter at issue, had a *visible, reasonable* connection with it—not such a connection as would go to show that the two facts, the collateral one and the main one, sometimes, or indeed often, go together, but such as will show that they *most usually* do so."

When tested by the foregoing rule, the possession of prophylactics on 16 March, 1953, does not tend to prove the defendant committed rape on the ...... day of June, 1949, and it does not tend to prove he committed incest or that he had sexual intercourse with an innocent and virtuous female over 12 and under 16 years of age on 15 August, 1952.

The evidence objected to in this case is in a category entirely different from that offered in *S. v. Fogleman,* 204 N.C. 401, 168 S.E. 536, and *S. v. Payne,* 213 N.C. 719, 197 S.E. 573. In each of those cases the defendant was indicted for murder. The evidence established the killing with firearms. After the homicide an arsenal including high-powered firearms was discovered in the automobiles in which the defendants were shown to have been riding. These weapons, together with the burglar tools concealed in the automobiles with them, were offered in evidence. The Court, in the *Fogleman case, supra,* which was quoted with approval in the *Payne case,* said: "Evidence of this character is admissible on the principle that it tends to show a design or plan." The articles introduced were implements of violence in a prosecution for a crime of violence.

The possession of two contraceptives does not tend to prove the owner had been engaged in acts of incest, rape, and carnal knowledge of an innocent and virtuous girl between the ages of 12 and 16 years. The admissibility of this evidence over defendant's objection was prejudicial error.

The case is sent back to the Superior Court of Rockingham County for a new trial on indictment No. 1724B; and new trial on the first count in indictment No. 1724A.

New trial.