## STATE v. JACOB DAVIS PHILLIPS.

(Filed 11 November, 1964.)

**1. Homicide § 20—**

Evidence tending to show that defendant was seated in the back seat of his automobile with a married woman not his wife, at night, that some person opened the door on the woman's side, that she screamed, and defendant got a shotgun from the front seat of the car, got out of the car and fired twice in the direction of the fleeing intruder whose identity he did not know, together with evidence that the shots so fired caused .death, *held* sufficient to be submitted to the jury in a prosecution of defendant for homicide.

**2. Homicide § 9—**

Evidence tending to show that defendant was sitting in a parked car with a married woman not his wife, that an intruder opened the door on her side of the car, that she screamed, and that defendant got a gun from the front seat of the car, got out of the car, and intentionly fired twice into the body of the intruder as he ran from the scene, *is held* not to show actual or apparent necessity prerequisite to self-defense.

**3. Homicide § 14; Criminal Law § 33—**

Defendant shot and killed an intruder as the intruder was leaving the scene after he had opened the door of the car in which defendant and a woman, not his wife, were parked. *Held:* The introduction of evidence that defendant was a married man, and that his companion was a married woman but not his wife, is competent as revealing part of the background in the light of which defendant's conduct must be judged.

**4. Criminal Law § 97—**

Argument of the solicitor outside the record tending to prejudice defendant by attacking his character *held* rendered harmless by correction and admonition.

APPEAL by defendant from *Huskins, J.,* June, 1964 Session, BURKE Superior Court.

In this criminal prosecution the defendant Jacob Davis Phillips was charged with the capital felony of murder in the shooting of Tillman Edward Orders. Upon arraignment, the solicitor announced the State would not ask for a conviction of murder in the first degree, but only for murder in the second degree or manslaughter, as the evidence warranted. The State called and examined Deputy Sheriff McGalliard, who testified:

"On the 4th of February 1964 I was a Deputy Sheriff of Burke County. I saw the defendant, Jacob Davis Phillips, on that day in the Sheriff's office at 9:10 o'clock, p.m. . . .

"When I saw the defendant he came in the office and asked to speak to me. Marjorie Poteat was with him in the office. At that time Jacob Davis Phillips stated that he and Marjorie Poteat were sitting in his automobile in the back seat off of a dirt road located off the Golf Course Road, down below the Showboat, and that while they were sitting in the back seat talking that someone came up to the rear door of the car on her side and jerked the door open, and at that time she started screaming and he reached in the front seat of his car and got a shotgun and stepped to the rear of his car and fired twice in the direction the figure ran. He said in the direction of the figure of a man running. . . .

"I did go to the location where he told me this occurred with Deputy Robinson. We drove to the Golf Course Road and then onto a dirt road to the right and drove up that road about 500 feet and approximately 21 feet to my right was a body lying face down in the field. From the identification of the body, it was Tillman Orders. He was dead at that time."

Dr. John Reece performed an autopsy on the body of Tillman Edward Orders which disclosed penetrating gunshot wounds, both in the chest and back. Dr. Reece testified in his opinion these wounds caused death.

The State introduced, over defendant's objection, evidence that J. D. Phillips, the defendant, is a married man; that his companion, Marjorie Poteat, is a married woman, but not the wife of the defendant. The State also introduced evidence that the automobile of the deceased was parked beside a pumping station near a stream about 500 feet from the place where the shooting occurred. In the vehicle were a number of steel traps and other trapping paraphernalia. A witness testified he saw the deceased wading the stream about five o'clock, wearing hip boots and carrying a number of steel traps, apparently tending his trap line.

The Sheriff had heard complaints from the deceased that his traps were being molested. In the deceased's pocket the officers found a paper on which were written several automobile license numbers, including the defendant's. The reason for the deceased's approach to the defendant's vehicle, whether in the attempt to discover who was robbing his traps, or otherwise, are matters of speculation.

The defendant did not offer evidence. His motion to dismiss was overruled. The jury found the defendant guilty of manslaughter. From a judgment of imprisonment, he appealed.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Deputy Attorney General for the State.*

*Patton, Ervin & Starnes, by Sam J. Ervin, III, John H. McMurray, for defendant appellant.*

HIGGINS, J. The defendant reported to the officers that he and Marjorie Poteat were in the back seat of his automobile, parked off the golf course road, when some person opened the door on the woman's side, she screamed, the defendant grabbed a double-barreled shotgun from the front seat, got out of the automobile and, although it was dark, he fired two loads of buckshot in the direction of the fleeing intruder whose identity he did not know. He and his companion left the scene, went directly to the Sheriff's office and reported what had occurred. The officers accompanied the defendant to the scene of the shooting where they found the dead body of Tillman Edward Orders. The body was about 40 feet from the point where the defendant's vehicle had been parked. "J. D. Phillips told me that he hadn't seen Tillman Orders for several years but said he knew him well. . . . he said if he had known who it was he would not have shot."

The defendant's own story fails to disclose any justification for the shooting. The defendant attempted to rely on the right to kill in his necessary self-defense. The court charged at great length on that right. Frankly, the evidence fails to disclose any danger — real or apparent — which would justify the defendant in firing the fatal shots. The evidence shows not one, but two charges of buckshot were intentionally fired into the body of Tillman Edward Orders as he ran from the scene. Ordinarily, one must be in danger, or believe he is, and have grounds for that belief, before he may open fire on a human being. When a state of war exists, or hostilities are imminent, military and naval orders are frequently given to shoot first and investigate and ask questions afterwards. The wisdom of this rule has its foundation in the necessity to guard against the hazards of surprise attack. In civil life a different

rule exists. There must be actual or apparent necessity to shoot; otherwise, shooting at a human being is unlawful. The defendant's motion for a directed verdict of not guilty was properly denied.

The defendant took exceptions to several portions of the court's charge. These we have examined with the care the importance of this case requires. We find them without merit.

The defendant relies for a new trial upon the admission of the evidence, over his objection, that the defendant at the time of the shooting was a married man, his companion 'was a married woman, but not his wife. The defendant contends this evidence amounted to proof of his bad character which the State had no right to offer since he neither testified nor offered evidence of his good character.

The defendant, in substance, told the officers he was out in lovers' lane with another man's wife, and realizing this situation exposed him to danger, in order to protect himself he carried along, and had handy a double-barreled shotgun, loaded with buckshot. In this situation when someone opened the door, the woman screamed, he grabbed the gun, got out of the car and fired two shots at an unknown intruder leaving the scene.

The foregoing is the background, in the light of which the defendant's conduct should be judged. The marriage status of the parties was a revealing part of the background and properly admitted in evidence. "While he (the judge) shall reject as too remote every fact which merely furnishes a forceful analogy, . . . he may admit as relevant the evidence of all those matters which shed a real, though perhaps an indirect and feeble light on the question in issue." *State v. Stone,* 240 N.C. 606, 83 S.E. 2d 543; Wharton's Criminal Evidence, 11th Ed., Vol. 1, § 224, p. 268; *State v. Payne,* 213 N.C. 719, 197 S.E. 573; *State v. Lawrence,* 196 N.C. 562, 146 S.E. 395.

Another of defendant's exceptive assignments relates to the solicitor's argument: "And he (defendant) says, 'Don't do anything to me . . . after I tore up another man's home, was out with another man's wife.'" Upon objection, the court said, "I will instruct counsel on both sides not to make an argument outside the evidence. Mr. McMurray's (defendant's counsel) argument was outside the evidence and I think that aspect of yours is, too . . . outside the evidence."

While the judge very well might have instructed the jury not to be influenced by argument outside the record by either side, the caution, we believe, had that effect. Ordinarily, this Court undertakes "to correct the errors of the judge, and not those committed by attorneys. Their errors are to be corrected by the trial judge, and when he fails in his duty it becomes a ground of exception," which may be presented for

review here upon proper exception and assignment. *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424; *State v. Fogleman,* 204 N.C. 401, 168 S.E. 536; *Lamborn v. Hollingsworth,* 195 N.C. 350, 142 S.E. 19; *State v. Harrison,* 145 N.C. 408, 59 S.E. 867.

It may be said to the credit of both the defendant and his companion that, notwithstanding their embarrassing position, nevertheless they reported this regrettable occurrence to the Sheriff's office immediately after it happened. This conduct may have reduced the verdict from murder in the second degree to manslaughter.

We have examined this record with care, and in the trial we find

No error.