## STATE v. WARREN F. ARSAD.

### (Filed 20 January, 1967.)

**1. Criminal Law § 87—**

Where the State's case is based on evidence tending to show that defendant feloniously entered a home and kidnapped an occupant thereof, and with the kidnapped victim as a decoy, forcibly took an automobile from a passerby, so that the evidence of the whole affair is pertinent and necessary to establish identity of defendant as the perpetrator of the offences, the three indictments for feloniously entering a dwelling, kidnapping, and common law robbery are properly consolidated for trial.

**2. Criminal Law § 41—**

Where the evidence discloses that defendants, wearing masks, feloniously broke into a dwelling, kidnapped an occupant thereof, and took a car from a passerby for their getaway, it is competent for the State to introduce in evidence disguises, clothing, guns and ammunition, properly identified as being in defendants' possession when they set out on the criminal escapade, and evidence of their respective heights and that they left an accomplice to await them in a car some distance from the scene of the crime, since all the circumstances have a direct bearing in proving identity or guilt.

**3. Kidnapping § 2; Burglary and Unlawful Breakings § 4; Robbery § 4—**

Circumstantial evidence in this case held sufficient to be submitted to the jury on the question of defendant's guilt of kidnapping, felonious entry into a dwelling, and common law robbery.

**4. Criminal Law § 156—**

Objection to a long excerpt from the charge, an exception to instructions addressed to separate and distinct legal aspects, and exceptions which fail to point out any specific instruction deemed objectionable, are ineffectual as broadside exceptions.

APPEAL by defendant from *Carr, J.,* March 7, 1966 Session, CUMBERLAND Superior Court.

The defendant was convicted on three felony charges which were consolidated and tried together over defendant's objection. In No. 21487 the indictment charged the felonious entering into the dwelling house of Sergeant McPhail near Fayetteville. In No. 21489 the

defendant was charged with common law robbery in the taking of one white Ford Fairlane automobile from the possession of one John D. Gautier. In No. 21493 he was charged with kidnapping Marie McPhail.

All the offenses are alleged to have been committed on November 6, 1965. The evidence disclosed that all were parts in a connected continuous escapade.

The State's evidence is here summarized: Pfc. Ronald K. Burford testified that on November 6, 1965, he was a member of the U. S. Marine Corps stationed at Camp Lejeune. Sgt. Ernest A. Jones and Pfc. Warren Arsad, the defendant, were members of Echo Company, Marine Corps, Camp Lejeune. About 1:00 p.m. on November 6, 1965, Burford, Sgt. Jones, and Arsad left Lejeune in Jones's automobile for Fayetteville. Jones carried Burford's 45 caliber automatic pistol under his sweater. Arsad had about a box and a half (75) 45 caliber Colt cartridges and put them in the glove compartment of the automobile. Near dark Sgt. Jones stopped on a dirt road near Fayetteville. When he opened the trunk to the automobile, "I saw two shotguns, a pistol, P-38, a little jump gun, a carbine with a broken stock . . . I saw some false faces, at least a mask, a trench coat, a light weight overcoat." The three transferred the weapons, ammunition, clothing, and disguises from the trunk to the back seat. Jones and Arsad put on the top coats, took the other pistol, two of the guns, and left Burford with instructions to wait for an hour and if they failed to return he should go back to camp. He waited for more than an hour, then returned to Camp Lejeune.

While on the stand as a State's witness, Burford identified a number of State's exhibits: "No. 1, my 45 caliber pistol issued to me as a member of the Marine Corps. The last time I saw it on November 6, 1965, Warren Arsad had it stuck down in his trousers. I can identify State's Exhibit No. 2 as the 30 caliber carbine which Sgt. Jones had. I can identify State's Exhibit 3 as the shotgun Arsad had . . . Exhibit 4 as the belt which Sgt. Jones gave Arsad, along with ammunition while we were on this dark road. . . . Arsad strapped the belt around his waist. I can identify State's Exhibit 5 as one of the masks that one of the men had, but I can't remember who had it. I can identify State's Exhibit 6 as the other mask which the men had . . . I can identify State's Exhibit 7 as the gloves both Arsad and Jones had when they left the car the last time . . . Exhibit 8 as one of the coats . . . Exhibit 9 as the ski hoods . . . brought by Jones and Arsad . . . Exhibit 10 as the P-38 pistol Sgt. Jones had in his shoulder holster." All the foregoing items were Marine Corps equipment.

Marie McPhail, age 14, testified for the State. She is the daugh-

ter of Sgt. McPhail and lives with her father, mother, grandmother, brothers and sisters in Hope Mills near Fayetteville. On the night of November 6, 1965, Sgt. McPhail was not at home. About eight o'clock in the evening, witness went to the back porch where she saw two masked and armed men crouched near the steps. They grabbed her, pushed her in the room where they forced her and the other members of the family to lie on the floor, tied them with cords and neckties, and proceeded to search the house. One of the men was short and the other taller. The short one did most of the talking. They disconnected the telephone, took a gun or two and some ammunition belonging to Sgt. McPhail. They broke lamps and upset furniture. They forced Marie McPhail to accompany them to the road near the house where they instructed her to flag a passing automobile. They concealed themselves behind some bushes until John Gautier and a companion, in a white Ford Fairlane, saw Marie and stopped. She was crying. The armed and masked men at gunpoint took the white Ford (valued at $1,200.00). They fired shots at Gautier. They wore clothing as described in detail by Sgt. Burford and by Mrs. McPhail.

The sheriff's office was alerted. Road blocks were set up. Soon a patrol car picked up the white Ford about two and one-fourth miles from the McPhail home, and gave chase. One of the men in the Ford fired on the officer a number of times. Six bullets pierced the windshield. The officer's car was disabled as a result of the bullet holes in the radiator and he lost contact. Other officers gave chase and also engaged in a gun battle in which the fleeing men fired an estimated 50 to 100 shots at the pursuing officers. One of the deputies recognized Jones as one of the two men in the white Ford which temporarily eluded them. A short distance down the road, however, the officers discovered it in the ditch. A search of the nearby woods resulted in the arrest of Jones and Arsad. They were taken into custody about one-quarter of a mile down a dirt road from the abandoned automobile. The officers took from them the several exhibits identified by Sgt. Burford. These were kept and the identification made at the trial.

Mrs. McPhail and Marie McPhail gave descriptions of the way the men were dressed, disguised and armed, which tied in with the other descriptions. Sgt. Burford testified that Sgt. Jones is about five feet nine inches tall and the defendant Arsad three or four inches taller.

The jury returned a verdict of guilty as charged in each of the three cases. In No. 21487 the court imposed a prison sentence of 10 years; in No. 21489 a sentence of 8-20 years to begin at the expiration of the sentence in 21487; and in No. 21493 a sentence of five

years to run concurrently with the sentence in 21487. The defendant was permitted to prosecute his appeal as a pauper. He was represented at the trial and on this appeal by able counsel appointed by the court.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Deputy Attorney General for the State.*
*Arthur L. Lane for defendant appellant.*

HIGGINS, J. The objection to the consolidation of the three cases for trial is not sustained. The felonious entry into the McPhail home, the kidnapping of Marie McPhail, and the forcible taking of the white Ford Fairlane in which the perpetrators attempted to make their getaway were so connected and tied together as to make the three offenses one continuous criminal episode. The evidence of the whole affair is pertinent and necessary to establish the identity of the appellant as one of the guilty parties. The three charges were properly consolidated and tried together. G.S. 15-152; *State v. Bryant,* 250 N.C. 113, 108 S.E. 2d 128; *State v. Combs,* 200 N.C. 671, 158 S.E. 252. Objection based on the consolidation is without merit.

The objections to the admission and exclusion of evidence were properly overruled. The separate facts and circumstances tie in, fit, and complement each other. The several incidents taken together furnish ample proof the appellant was the tall man involved. The evidence of Marie McPhail makes out a case against the short and the tall perpetrators. The disguises prevented her from identifying them as Jones and Arsad. The State, therefore, offered proof of the many related facts and circumstances to establish their identity.

Arsad and Jones were members of the Marine Corps. They possessed clothing, disguises, guns, and ammunition when they left Lejeune in the afternoon of November 6. The guns and equipment were the property of the Marine Corps. Sgt. Burford gave detailed descriptions of these items and specifically identified them at the trial. His testimony discloses that Arsad and Jones possessed this equipment, including the disguises, when they left the witness near the McPhail home shortly before 8:00 p.m. on November 6. These men instructed the witness to wait an hour and if they failed to return he was to go back to camp without them. The meeting failed as a result of their arrest. The officers took the disguises, gloves, arms, and ammunition from Jones and Arsad at the time of the arrest. These articles were produced in court with the information that they were taken from the possession of Jones and Arsad.

The sum total of the circumstances clearly implicate the appellant. Properly admissible are all circumstances which cast a direct,

though feeble light on the ultimate facts in issue (guilt and identity.) *State v. Stone,* 240 N.C. 606, 83 S.E. 2d 543; *State v. Payne,* 213 N.C. 719, 197 S.E. 573; *State v. Lawrence,* 196 N.C. 562, 146 S.E. 395; *State v. Brantley,* 84 N.C. 766. The circumstances which Judge Carr permitted the State to introduce in evidence were properly admissible. Together they make out a case for the jury. *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654; *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

The defendant has brought forward 26 exceptions to the charge. In some instances the objection is taken to half a page or more; and frequently a single exception includes instructions addressed to separate and distinct legal aspects of the crimes charged. Such exceptions are broadside. Many others fail to point up any specific instructions deemed objectionable. These likewise are broadside. Nevertheless, as is not unusual in grave cases, we have reviewed the charge. The instructions given to the jury were clear, full, and in accordance with approved appellate procedure.

No error.