STATE OF NORTH CAROLINA v. GRADY WORTH OLD, Nos. 66-CRS-7. 66-CRS-9, 66-CRS-10.

(Filed 22 November, 1967.)

**1. Criminal Law § 29—**

Order by the resident judge committing defendant to a State hospital for the purpose of determining his mental capacity to stand trial is a precautionary measure and is specially authorized by G.S. 122-91.

**2. Criminal Law § 92—**

Ordinarily, an indictment for a minor offense should not be consolidated for trial with a capital charge.

**3. Same—   Indictments for assaults and for murder held properly consolidated under facts of this case.**

Where defendant is charged in two indictments with assault with a deadly weapon and in another indictment with murder, and it appears that the first assault was committed about daybreak, that the person assaulted identified defendant and immediately obtained a warrant charging defendant with felonious assault, that officers arrived at defendant's home shortly thereafter, that soon thereafter there was a shotgun blast from near the front door of defendant's home and that a deputy sheriff who had remained near that door staggered out in view, mortally wounded, and that shortly thereafter there was another shotgun blast from the

.house at another deputy at his car, *held.* the indictments were properly consolidated for trial, since the three charges are so connected that evidence of each fits into and complements the others.

**4. Criminal Law § 41—**

In a criminal prosecution, evidence tending to establish any incident which, with evidence of other incidents, tends to form a composite picture identifying defendant as the perpetrator of the offense charged, is competent.

**5. Homicide § 20;    Assault and Battery § 14—    Evidence held sufficient to sustain verdicts of defendant's guilt of assaults with a deadly weapon and murder in the first degree.**

Evidence of a neighbor of defendant positively identifying defendant as the person who shot a rifle into the neighbor's house early in the morning, the shot shattering the windowpane and passing over the bed where the neighbor was lying, that the neighbor immediately obtained a warrant charging defendant with felonious assault, that when the deputy sheriffs arrived at defendant's home, one of them left the front porch to go to the back of the house and that after he had passed the corner of the house there was a blast from a shotgun from near the front door, and that the other deputy, who had remained at that door, staggered into view, mortally wounded, that thereafter there was another shotgun blast from the house at another deputy at his car, together with evidence that a search of defendant's home under a warrant revealed a repeating shotgun with an exploded shell in the chamber, that officers found defendant hiding in a ditch some 150 feet from defendant's house, armed with a repeating rifle with ten charges therein, and that defendant gave himself up only after repeated demands, *held* sufficient to be submitted to the jury in a prosecution of defendant on a charge of murder in the first degree and charges of assaults with a deadly weapon, notwithstanding the absence of evidence of motive for the first shot at the witness who obtained the warrant of arrest or evidence positively identifying defendant as the person who fired the shot inflicting fatal injury and the shot hitting the deputy sheriff's car.

THE appeals were argued here on August 29, 1967. Our decision, reported in 271 N.C. 341, remanded the cause to the Superior Court of CAMDEN County for correction of the record.

The corrections were made in the Superior Court after full hearing in which the defendant, his counsel, and the solicitor were present. The record now discloses that defendant entered pleas of not guilty in each of the three cases. After hearing the evidence, the argument of counsel, and the charge of the Court, the jury returned these verdicts: In 66-CrS-7, "guilty of assault with a deadly weapon on E. L. Taylor"; in 66-CrS-9, "guilty of the charge of murder in the first degree with recommendation of life imprisonment"; in 66-CrS-10, "guilty of assault with a deadly weapon upon John Joseph Walston". On each of the assault charges, the Court imposed a prison sentence of two years. On the murder charge, the Court imposed the mandatory sentence of life imprisonment.

The evidence, in short summary, disclosed that on November 8, 1966, E. L. Taylor lived alone about two miles from South Mills in Camden County. At the same time, the defendant lived alone approximately 300 yards from the Taylor home. As day was breaking, Taylor, while in bed, was awakened by gun fire outside his bedroom window. A rifle bullet shattered the windowpane, passed over the bed, and lodged in the wall. The bedroom was on the first floor. A line from the hole in the window to the hole in the wall indicated the bullet passed about 14″ over Taylor's bed. Immediately, Taylor went to the window, saw and positively identified the defendant standing outside the shattered window with a 30-30 rifle in his hand. Other shots were fired.

Immediately after the shooting, Taylor slipped out by a back door, went to the home of a magistrate, and obtained a warrant charging the defendant with a felonious assault with intent to kill. Deputy Sheriff John Joseph Walston and Deputy Sheriff Montelle Williams went to the home of the defendant for the purpose of serving the warrant. The officers arrived at the defendant's home, taking with them E. W. Old, Jr., nephew of the defendant. Old, Jr. and the two officers went to the front door, which was closed. Old called "Uncle Grady" two or three times, receiving no answer. Deputy Sheriff Walston and Old left the front porch to go to the back of the house. After they had passed the corner of the house, there was a blast from a shotgun near the front door. Immediately, Deputy Sheriff Williams, who had remained near that door, staggered out in view of Walston and fell. Walston ran to his automobile for a revolver which was in the glove compartment. As he opened the door of the automobile, and was bent over the seat in the act of opening the glove compartment, there was another shotgun blast from the house and three of the pellets penetrated the windshield. Walston, while lying on the floorboard, managed to start the car and back it out into the road. He drove a short distance, got in communication with the Sheriff, and reported the shooting of Williams.

At about 9:00 or 9:15, the Sheriff, with other deputies and a highway patrolman, came to the Old home. Deputy Sheriff Walston delivered to the Sheriff the warrant which charged the defendant with felonious assault on Taylor. In searching the house, the officers discovered 7 or 8 guns, one a 30-30 rifle and at least two shotguns. A repeating shotgun was lying on a chair, with an exploded shell in the chamber. They also found another empty 12 gauge shotgun shell which smelled of freshly burned gun powder. No one was in the house. However, an old ditch, along which weeds, bushes and trees had grown, extended from a point near the house several hundred

feet across a pasture field in which the defendant's cattle were grazing. The officers found the defendant concealed in this ditch, at a point 100 to 150 feet from the house. One of the officers, with a megaphone, addressed the defendant, informing him that other officers had him surrounded and that he must come out with his hands up. This he did, and submitted to arrest. The defendant, when first seen, had a rifle in his hand. Witnesses found two empty 30-30 cartridge cases at the point outside Taylor's bedroom window where he had seen the defendant at the time or shortly after the shots were fired.

The shots were fired at Taylor about 6:00 in the morning. Walston and Williams attempted to serve the warrant about 8:00. At this time, the shots were fired at Walston and Williams. The Sheriff and other deputies arrived at 9:00 or 9:15, and shortly thereafter arrested the defendant.

The autopsy showed that Montelle Williams had been hit in the face, neck and chest with 40 shotgun pellets. The Pathologist testified that some of these had damaged blood vessels and tissues and as a consequence had caused the lungs to fill with fluid. One lung had collapsed. Death resulted.

The three charges were consolidated and tried together, with the results heretofore disclosed. From judgment upon the verdicts of guilty, the defendant appealed, assigning many errors.

*T. W. Bruton, Attorney General; George A. Goodwyn, Assistant Attorney General, for the State.*

*John T. Chaffin for the defendant-appellant.*

HIGGINS, J. The record, including the corrections, covers almost 300 pages. Defense counsel, alert to the interests of his client at all stages of the trial, noted 275 exceptions. They are presented here for review under 65 assignments of error, most of which are discussed in the defendant's carefully prepared brief. We have examined each assignment. Those not discussed have been found to be without merit.

The defendant assigns as error the pre-trial order by the resident judge which committed the defendant to a state hospital for the purpose of determining his capacity to stand trial. This procedure was a precautionary measure on the part of the judge and is specially authorized by G.S. 122-91. *State v. Arnold,* 258 N.C. 563, 129 S.E. 2d 229.

Judge Peel consolidated for trial the two charges of felonious assault on Taylor and Walston, and the capital charge of murder.

The assault on Taylor was charged in the warrant which officers Walston and Williams were attempting to serve when the shot was fired at Walston and Williams was killed. The three charges were so connected and tied together that evidence of each offense fits into and complements the others. Evidence of the entire episode is competent on the question of identification. In these circumstances, joinder is authorized by G.S. 15-52. *State v. Arsad,* 269 N.C. 184, 152 S.E. 2d 99; *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269. Ordinarily, and unless as here, the evidence showing guilt of a minor offense fits into the proof on the capital charge, the minor offenses should not be included.

Numerous exceptions and assignments of error are based on the admission of evidence. While the witness Taylor saw the defendant armed with the rifle outside his window on the occasion of the shooting into his bedroom, there was no witness able to say the defendant fired the shots that missed officer Walston and felled officer Williams. The State, therefore, had to rely on circumstantial evidence to fix on the defendant responsibility for these shootings. Many circumstances were detailed in the evidence which, standing alone, were of small moment, but when they were fitted together, they complemented each other in such manner as rendered them sufficient to warrant the jury in finding the defendant did the shooting. While no motive appears for the assault on Taylor, the evidence positively identified the defendant as the person who fired the shots. The State's evidence disclosed the defendant knew Montelle Williams and knew he was a deputy sheriff. The evidence was sufficient to warrant the jury in finding the shooting of the officers was for the purpose of preventing arrest. The totality of the circumstances detailed in the evidence was sufficient to identify the defendant as the perpetrator of the crimes although direct evidence of the assault on Walston and the fatal shooting of Williams is lacking. The defendant began the day by shooting at Taylor. Thereafter, from the defendant's house the shots were fired at officers Walston and Williams. These came from the front door of the defendant's house where he lived alone. A search of the house disclosed a rather formidable arsenal, and a repeating shotgun with an exploded shell in the chamber was lying on a chair. Outside the house, a distance of 100 to 150 feet from it, the officers found the defendant hiding in a ditch, armed with a repeating rifle with 10 cartridges in the magazine. Only after repeated demands that the defendant come out with his hands up did he heed the command and submit to arrest. This is only the framework of the State's case, supplemented by other details indicating guilt. *State v. Stephens,* 244

N.C. 380, 93 S.E. 2d 431; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Moore,* 262 N.C. 431, 137 S.E. 2d 812; *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661; *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654; *State v. Williams,* 269 N.C. 376, 152 S.E. 2d 478.

The defendant's counsel cross-examined the witnesses about the guns found in the defendant's home, and was permitted rather wide leeway in his cross-examination. Inasmuch as the defendant did not testify, and did not offer evidence, only the State's evidence is involved. Nothing beneficial to the defendant was excluded on the State's objection. The officers entered and searched the defendant's home under the authority of a warrant charging the owner with a felony. The discovery of the guns and the empty shells resulted from the defendant's lawful entry into the house from which the shootings originated. The evidence as to the guns, etc. was not challenged by objection. Careful examination fails to disclose any prejudicial error in the admission of evidence.

In the assault cases, the Court instructed the jury the evidence was insufficient to make out a case of felonious assault. The Court correctly instructed the jury with respect to the lesser offenses involved in the assault indictments. Evidence was sufficient to support the verdicts finding the defendant guilty of assault with a deadly weapon on Taylor and on Walston. The sentence of two years imprisonment in each case run concurrently with each other and with the life sentence on the first degree murder charge.

The evidence, in our opinion, was sufficient to survive the motion to dismiss. Evidence of motive for the shots fired at Taylor was lacking. Evidence was ample from which the jury could reasonably find the shots at officers Walston and Williams were fired in an effort to resist arrest. Arrest was effected only after the officers discovered the defendant concealed in the ditch, surrounded him and notified him by megaphone to come out with his hands up. This he did, leaving his loaded rifle in his hiding place. The evidence qualifies as sufficient to permit its submission to the jury and to support the verdicts. *State v. Lakey,* 270 N.C. 786, 154 S.E. 2d 900; Strong, N. C. Index, 2d Ed., Vol. 2, § 41, Lawyers Cooperative Publishing Company, 1967.

The defendant, by 14 assignments of error, challenges parts of the charge. However, when taken in its entirety, the charge covers all material parts of the evidence and correctly applies the law thereto. The charge is free from valid objection.

No error.