STATE OF NORTH CAROLINA v. JAMES LENARD SMALL

No. 101

(Filed 2 December 1980)

### 1. Criminal Law § 9— principal defined

A principal is one who is present at and participates in the commission of the crime charged.

### 2. Criminal Law § 9— principal in first or second degree

He who actually perpetrates the crime either by his own hand or through an innocent agent, or who acts in concert with the principal perpetrator, is a principal in the first degree, and any other person who is actually or constructively present at the place and time of the crime and who aids, abets, assists, or advises in its commission is a principal in the second degree.

### 3. Criminal Law § 9— principals in first or second degree — equal guilt

Principals in the first degree and those in the second degree are equally guilty of the offense committed and may be punished with equal vigor.

### 4. Criminal Law § 10— accessory before the fact

An accessory before the fact is one who is absent from the scene when the crime was committed but who participated in the planning or contemplation of the crime in such a way as to "counsel, procure, or command" the principal(s) to commit it.

### 5. Criminal Law § 10— principal in second degree — accessory before fact — distinction

The primary distinction between a principal in the second degree and an accessory before the fact is that the latter was not actually or constructively present when the crime was in fact committed.

### 6. Criminal Law §§ 9.1, 10— accessory before fact not present at crime scene — no conviction as principal on conspiracy theory

A defendant who was not actually or constructively present at the commission of a crime may not be convicted as a principal to that crime solely upon the basis that he participated in a conspiracy by counseling, procuring or commanding some other person to bring it about.

### 7. Criminal Law §§ 9, 10, 77; Conspiracy § 5.1— acts and declarations of co-conspirators — relevancy to show aider and abettor or accessory before the fact

When one who conspires is shown to have been present at the commission of the crime contemplated by or a natural consequence of the original conspiracy, evidence of the conspiracy, including the conspiratorial acts and declarations of all the conspirators, may then be relevant to show his intent and participatory presence, i.e., that he aided and abetted in the commission of the crime, or acted in concert with those who did, in which event he is substantively liable as a principal. Likewise, when a defendant-conspirator is shown to have been absent from the

scene of the crime, evidence of the conspiracy may nevertheless be relevant to support the State's theory that the defendant participated as an accessory before the fact.

**8. Homicide § 31— verdict of first degree murder — defendant not at crime scene —conspiracy theory — guilt as accessory before the fact**

Where defendant was indicted for the first degree murder of his wife, the jury found defendant guilty of first degree murder, a sentence of death was imposed, the State's evidence tended to show that defendant hired another to murder his wife, that she was murdered by the one so hired, and that defendant was not present at the murder scene, and the case was submitted to the jury on the theory that defendant could be convicted as a principal perpetrator because he participated in a conspiracy to commit the murder, the jury verdict, in effect, found defendant guilty of being an accessory before the fact to murder, and defendant's conviction of first degree murder must be set aside and the case remanded for entry of a sentence of life imprisonment, the sentence prescribed by G.S. 14-6 for one who is an accessory before the fact to murder.

**9. Criminal Law § 10; Indictment and Warrant § 18— indictment for principal crime — conviction as accessory before the fact**

The statute which changes the prior rule that one indicted for the principal felony may be convicted upon that indictment as an accessory before the fact, G.S. 14-5.1, is to be applied prospectively only to those cases in which the indictment was returned on or after its effective date of 1 October 1979; therefore, a defendant indicted on 4 December 1978 upon the charge of the principal felony of first degree murder could be convicted as an accessory before the fact to the crime of murder.

**10. Criminal Law § 22— arraignment — failure of record to show charges read to defendant**

Where the record shows that an arraignment took place and defendant, duly represented by counsel, entered a plea of not guilty, defendant was not prejudiced by failure of the record to show that the charges were read or summarized to defendant as required by G.S. 15A-941, since it was the duty of defendant to object and to have appropriate entries made in the record to show the basis for the objection if he was not properly informed of the charges.

**11. Criminal Law § 34.2; Homicide § 17.1— murder of defendant's wife — details of defendant's sexual relations with other women**

While evidence tending to show that defendant had, generally, had sexual relations with other women might have been competent to show defendant's motive for hiring someone to kill his wife, the trial court erred in the admission of testimony detailing the manner in which defendant engaged in sexual relations with other women; however, such error was not prejudicial since the testimony did not make defendant out to be a "moral degenerate" and it could not have affected the result of the trial.

**12. Criminal Law § 86.5; Homicide § 17.1— murder of defendant's wife — cross-examination of defendant — sexual relations with other women**

In this prosecution of defendant as an accessory before the fact to the murder

State v. Small

of his wife, defendant could properly be asked on cross-examination for impeachment purposes about his sexual relations with other women and other forms of misconduct.

**13. Criminal Law § 62— polygraph results — cross-examination invited by direct testimony**

The trial court did not err in permitting the State to cross-examine defendant concerning the results of a polygraph test administered to defendant where (1) defendant failed to object to one question and to move to strike his answer thereto; (2) defendant's objection to a subsequent question was not on the ground that the question asked for polygraph results but was on the ground that the witness was being asked to repeat former testimony, and it was within the trial court's discretion to permit the testimony to clear up any confusion as to which of two polygraph tests the witness was referring; and (3) defendant's direct examination, which left the false impression that the State had refused his offer to submit to a polygraph test, rendered admissible the State's cross-examination of defendant as to whether he had been given a polygraph test and the results thereof.

Justice BROCK did not participate in the consideration or decision of this case.

Justice HUSKINS dissents.

BEFORE *Judge Donald L. Smith*, at the 2 April 1979 Special Criminal Session of ROBESON Superior Court, defendant was convicted of conspiracy to commit murder and first degree murder. From a judgment imposing the death sentence on the murder count (judgment arrested as to the conspiracy), defendant appeals pursuant to G.S. 7A-27(a). This case was argued as No. 4. Spring Term 1980.

*Rufus L. Edmisten, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the state.*

*Bobby W. Rogers and Linwood T. Peoples for defendant appellant.*

EXUM, Justice.

The state's evidence tends to show that defendant hired another to murder defendant's estranged wife and that she was murdered by the one so hired. Defendant has been convicted of the murder and sentenced to death. The most important question, therefore, raised by defendant's appeal is whether one who is an accessory before the fact to a felony within the meaning of G.S. 14-5[1]

---

[1]The statute defines such an accessory as one who shall "counsel, procure, or command any other person to commit any felony . . . ."

may be convicted and punished as a principal perpetrator, once the crime is committed, on the theory that he participated in a conspiracy to commit the offense charged. We hold that he may not.

Defendant's conviction for first degree murder must therefore be set aside. The jury, in effect, has found him guilty of being an accessory before the fact to the murder. We find no other prejudicial error in the trial. We remand the case for entry of a sentence of life imprisonment, the sentence prescribed in G.S. 14-6 for one who is an accessory before the fact to murder.

Defendant and codefendant Paul Lowery were convicted of the first degree murder of defendant's wife Evelyn Small. The state's evidence tended to show that defendant had experienced marital difficulties which led to separation from his wife in September, 1977. A deed of separation was drawn which provided that defendant was to convey to his wife his interest in the couple's residence and his automobile free of all encumbrances and debts, to make all payments on the mortgage on the residence, and to provide child support payments amounting to $200.00 per month.

Earl Locklear, a friend of defendant, testified for the state that defendant had talked with him on several occasions about killing Mrs. Small. According to Locklear's testimony, defendant "needed to get his wife killed because the divorce papers was laying uptown ready to be signed by him. He said if he didn't get his wife killed before he signed the divorce papers, that his wife's mother or father, one would get the house and he said nobody wasn't getting the house." Locklear testified that defendant had asked him to help Paul Lowery murder the deceased in exchange for $4,000.00. Locklear refused and told defendant he wanted no part of the scheme.

The state's chief witness Vincent Johnson testified that defendant had initially approached him in September 1978 with a similar offer. Johnson first refused to cooperate but eventually agreed to perform the deed with Paul Lowery. Several attempts were made by Johnson and Lowery thereafter to kill the deceased but in each case the attempts were abandoned. Finally, on the evening of 14 November 1978, the pair gained entrance to Mrs. Small's house with a key that defendant had supplied them. They went through the house until they found Mrs. Small's bedroom. According to Johnson, Lowery then tried to smother Mrs. Small and finally succeeded in strangling her. Johnson and Lowery then left the

scene and went to see defendant.

Defendant took the stand in his own behalf and denied any involvement whatsoever in the killing of his wife.

In his charge to the jury relating to the indictment against defendant of first degree murder, Judge Smith submitted as possible verdicts: Guilty of first degree murder, guilty of second degree murder, guilty of accessory before the fact to murder, guilty of voluntary manslaughter, and not guilty. In his final mandate, he instructed the jury in pertinent part:

> "So, I charge that if you should find from the evidence, beyond a reasonable doubt, that on the 14th day of November, 1978, either Paul Lowery or Vincent Johnson intentionally strangled or smothered Evelyn Small, thereby proximately causing. Evelyn Small's death, to kill her, and that the act was done with malice, with premeditation and deliberation, *and that the person who strangled or smothered Evelyn Small had previously agreed with James Small to murder Evelyn Small, and at the time of the agreement, James Small and the person with whom he made the agreement intended that it be carried out, and that the agreement had not been terminated, and that the strangling or smothering was done in the furtherance of the agreement, then it would be your duty to return a verdict of first degree murder, as alleged in the Bill of Indictment, as to James L. Small."* (Emphasis supplied.)

After Judge Smith instructed on the other possible verdicts, the jury retired and later returned with verdicts of guilty of first degree murder as to both defendant and codefendant Paul Lowery. Based upon the jury's recommendations subsequent to the sentencing hearing required by G.S. 15A-2000, the court sentenced defendant to death. From this judgment he appeals.

I

Defendant argues that since there was no evidence adduced at trial that he was actually or constructively present during the killing of his wife, he was criminally liable at most as an accessory before the fact to her murder. Since G.S. 14-6 provides for the punishment of life imprisonment for an accessory before the fact to

---

State v. Small

---

murder;[2] defendant contends that the sentence of death imposed upon him cannot stand. We agree.

This case was prosecuted on the theory that defendant, having conspired with Lowery and Johnson to commit murder, thereby became liable as a principal to the crime of murder once the object of the illegal agreement was attained. That portion of the judge's final mandate quoted above clearly directed the jury to find defendant guilty of first degree murder if they were convinced beyond a reasonable doubt that the deceased was intentionally killed with malice and premeditation in furtherance of the conspiracy in which defendant participated. The jury's verdict and the judgment subsequently imposed by the trial court clearly indicate that defendant, as a conspirator, is now held liable as a principal to the substantive offense which was the object of the conspiracy but which was committed in his absence by his co-conspirators. The question presented, then, is whether a conspirator may be held substantively liable for the acts of his co-conspirators without reference to our traditional common law principles governing parties to a crime. We answer in the negative.

**[1—3]** Our law governing felonies continues to maintain common law distinctions between principals and accessories. *State v. Furr,* 292 N.C. 711, 235 S.E. 2d 193, *cert. denied,* 434 U.S. 924 (1977). A principal is one who is present at and participates in the commission of the crime charged. He who actually perpetrates the crime either by his own hand or through an innocent agent, or who acts in concert with the principal perpetrator, is a principal in the first degree. Any other person who is actually or constructively present at the place and time of the crime and who aids, abets, assists, or advises in its commission, is a principal in the second degree.[3]

---

[2]G.S. 14-6 provides in pertinent part that "[a]ny person who shall be convicted as an accessory before the fact in either of the crimes of murder, arson, burglary or rape shall be imprisoned for life. . . ."

[3]Originally, only the actual perpetrator of a felony was called a principal, and the law deemed one who was present but who did not actually commit the crime an accessory "at the fact." At a relatively early stage in the development of our modern common law, however, the accessory at the fact began to be recognized as a principal in the second degree: "But at this day, and long since, the law hath been taken otherwise, and namely, that all that are present, aiding, and assisting, are equally principals with him that gave the stroke . . . and tho they are called principals in the second degree, yet they are principals . . . ." 1 M. Hale, Pleas of the Crown *437. *See also* E. Coke, 3d Institutes *138.

State v. Small

Principals in the first degree and those in the second degree are equally guilty of the offense committed and may be punished with equal vigor. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970); *State v. Powell,* 168 N.C. 134, 83 S.E. 310 (1914); *State v. Wiggins,* 16 N.C. App. 527, 192 S.E. 2d 680 (1972); 22 C.J.S. *Criminal Law* §§ 83, 85 (1961).

**[4,5]** An accessory before the fact is one who is absent from the scene when the crime was committed but who participated in the planning or contemplation of the crime in such a way as to "counsel, procure, or command" the principal(s) to commit it. G.S. 14-5; *State v. Benton, supra.* Thus, the primary distinction between a principal in the second degree and an accessory before the fact is that the latter was not actually or constructively present when the crime was in fact committed. *Id; State v. Powell, supra; see also* LaFave and Scott, Criminal Law § 63 at p. 498 (1972); 1 Wharton, Criminal Law § 263 at pp. 350-351 (12th ed. 1932); 4 W. Blackstone, Commentaries *36.

At common law principals in the first degree, principals in the second degree, and accessories before the fact were all guilty of the same felony; they were all parties to the same crime. J. Stephen, A Digest of the Criminal Law 21 (9th ed. 1950); 1 M. Hale, Pleas of the Crown *626. "This merely gave recognition to the legal theory that one is considered to have done what he has caused to be done." R. Perkins, *The Act of One Conspirator,* 26 Hastings L.J. 337, 349 (1974). There were nevertheless important procedural differences in the prosecution of principals and accessories before the fact, one of which was that accessories before the fact must have been indicted as such in order for a conviction to stand. *See, e.g., State v. Green,* 119 N.C. 899, 26 S.E. 112 (1896); *State v. Dewer,* 65 N.C. 572 (1871). Virtually all states have by now avoided such procedural limitations by legislative reform. *See* Model Penal Code § 2.04, Appendix (Tent. Draft No. 1, 1953) and the statutes cited therein. In this state, the procedural problems stemming from a variance between the indictment and proof were, until recently, sufficiently answered both by case law and statutory authority to the effect that the charge of accessory before the fact was to be deemed included in the charge of the principal crime. *See State v. Holmes,* 296 N.C. 47, 249 S.E. 2d 380 (1978); *State v. Jones,* 254 N.C. 450, 119 S.E. 2d 213 (1961); 41 N.C. L. Rev. 118 (1982). Effective 1 October 1979, however, newly enacted G.S. 14-15.1 reverts to the prior common law principle that the crime of accessory before the fact is not "a lesser

included offense of the principal felony." Under this statute one indicted for the principal felony may not be convicted on that indictment as an accessory before the fact. 1979 N.C. Sess. Laws, c. 811. Although our law continues to follow the rule that an accessory before the fact is liable as a party, *i.e.*, as an accessory, to the commission of the substantive offense, the *punishment* of an accessory before the fact has long been provided for in separate statutory provisions. *See* G.S. 14-5; G.S. 14-6.[4]

Against this background, our inquiry is whether and to what degree certain rules pertaining to the law of conspiracy may operate to vary or abrogate these classifications so well preserved in our case law and statutes. We focus not upon the crime of conspiracy *per se*[5] but rather upon the scope of a conspirator's substantive liability for a criminal offense committed by his fellow co-conspirators in his absence within the scope of, or in furtherance of, the original agreement.

One need not go far to find such familiar statements as the following:

"A conspirator is criminally responsible for the acts of his co-conspirators which are committed in furtherance of the common design and follow incidentally as the natural and probable consequences of such design, even though he was not present when the acts were committed . . . ." 15A C.J.S. *Conspiracy* § 74 (1967).

"[I]f two or more persons enter into a conspiracy, any act done by any of them pursuant to the agreement is, in contemplation of law, the act of each of them and they are jointly responsible therefor . . . . It makes no difference as to the liability of a conspirator that he was not physically

[4]Although G.S. 14-5 formerly allowed an accessory before the fact to be convicted upon an indictment charging the principal felony (now changed by the enactment of G.S. 14-5.1, referred to in the text), it provided that the accessory would be punished "in the same manner as any accessory before the fact to the same felony." The statutory provision pertinent to punishment of an accessory before the fact is G.S. 14-6, the relevant text of which is set out in Note 2, *supra*.

[5]For statements of the general principles pertinent to the law of conspiracy, *see State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495, *cert. denied*, 433 U.S. 907 (1977); *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964). *See generally* Developments in the Law, *Criminal Conspiracy*, 72 Harv. L. Rev. 920 (1959).

present when the acts were committed by his fellow con-
spirators . . . . And this joint responsibility extends not
only to what is done by any of the conspirators pursuant to
the original agreement but also to collateral acts incident
to and growing out of the original purpose." 16 Am. Jur.
2d *Conspiracy* § 19 (1979).

"It is a familiar rule that when several parties conspire
or combine together to commit any unlawful act, each is
criminally responsible for the acts of his associates or
confederates committed in furtherance or in prosecution
of the common design for which they combine . . . . When
one of the conspirators commits a homicide in the further-
ance of the original design, it is, in the eyes of the law, the
act of all . . . . The actual perpetrator is considered to be the
agent of his associates. His act is their act, and all are
equally criminal." 40 Am. Jur. 2d *Homicide* § 34 (1968).

When interpreted as rules of substantive liability, statements
such as these would seem to render immaterial any inquiry into
whether a criminal defendant who has conspired with others to
commit a completed offense should be viewed as a principal or
accessory. Instead, the quoted "black letter" appears to stand for the
proposition that any defendant, having once agreed with others to
further an unlawful enterprise, *ipso facto* becomes liable as a prin-
cipal to any crimes committed thereafter by his partners so long as
the criminal acts are "in the furtherance" of or reasonably "inciden-
tal" to the original illegal design. Such a broad reading leads to the
rather startling result that a conspirator's criminal liability for the
act of another may be based less upon the circumstances of his
personal participation than upon his presumed status as "partner" in
all actions which proximately result from the venture originally
agreed upon. Fictions and presumptions derived from the civil law
of agency and partnership thus comingle with tort law notions of
foreseeability and proximate cause to provide a stew of expanded
criminal liability. We recognize that the rule adopted for federal
prosecutions in *Pinkerton v. United States*, 328 U.S. 640 (1946),
appears to sanction such a result. Defendant there was convicted
both of conspiring with his brother to evade federal taxes and for the
subsequent acts of evasion committed by his brother while defend-
ant was in jail. The trial court had instructed the jury that they
could convict defendant of the offenses committed by his brother
upon a finding that the offenses were committed in the furtherance

of the original conspiracy. The Supreme Court affirmed. Writing for the majority, Mr. Justice Douglas first noted that it was well settled in federal case law of conspiracy that the overt act of one conspirator may be deemed the act of all. 328 U.S. at 646-47. By analogy, then, it seemed reasonable to hold all conspirators liable for the substantive offenses committed by one of them:

> "The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner is attributable to all. An overt act is an essential ingredient of the crime of conspiracy under [the Federal Criminal Code]. If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense." *Id.* at 647.

By holding in effect that membership in a conspiracy is sufficient for criminal liability as a principal for all offenses committed in furtherance of the conspiracy, the *Pinkerton* decision obviates application of common law or statutory distinctions among the various parties to a criminal offense.[6]

**[6]** We are not so free to do the same with the law of this state. As earlier noted, the distinction between an accessory before the fact and a principal to a criminal offense is well maintained both in our

---

[6]This point was noted in Mr. Justice Rutledge's dissent, joined by Mr. Justice Frankfurter, 328 U.S. at 649: "[The majority's] ruling violates both the letter and spirit of what Congress did when it separately defined the three classes of crime, namely: (1) completed substantive offenses; (2) aiding, abetting or counselling another to commit them; and (3) conspiracy to commit them." It should be noted, however, that federal law defines one who aids, abets, counsels, or procures the commission of a federal offense as a "principal." 18 U.S.C. § 2 (b) (formerly 18 U.S.C. § 550). Stripped to its essentials, then, the *Pinkerton* decision could be read as holding that a jury finding that defendant conspired to commit the substantive offense is legally equivalent to a finding that defendant counseled, procured, aided, or abetted the commission of the substantive offense. Thus the remark by Mr. Justice Jackson, who did not participate in *Pinkerton*, that the *Pinkerton* holding "sustained a conviction of a substantive crime where there was no proof of participation in or knowledge of it, upon the novel and dubious theory that conspiracy is equivalent in law to aiding and abetting." *Krulewitch v. United States*, 336 U.S. 440, 451 (1949) (Jackson, J., concurring).

cases and in our legislation. The distinction is of more than academic importance. Our General Assembly has mandated that an accessory before the fact to a felony be indicted and convicted as such, G.S. 14-5.1, and, upon conviction, be punished as such. G.S. 14-6. There is not the slightest indication in any of our statutes that a defendant's role as a conspirator may be used to deny the operation of these provisions where they obviously apply. It is well established that in order for a defendant to be punished for criminal conduct, his actions must fall plainly within the prohibition of the statute which defines his crime. *State v. Cole*, 294 N.C. 304, 240 S.E. 2d 355 (1978). As a corollary to this principle, it is equally clear that where a defendant's conduct is plainly defined as criminal by an applicable statute, neither the courts nor the prosecution may manipulate inapposite analogies drawn from other areas of the law to avoid the statute's intended effect. It is for the legislature to define a crime and prescribe its punishment, not the courts or the district attorney. *See* N.C. Const. Art. I, § 6; *In re Greene*, 297 N.C. 305, 255 S.E. 2d 142 (1979). Accordingly, we join the ranks of those who reject the rule in *Pinkerton*.[7] We hold that a defendant who was not actually or constructively present at the commission of a crime may not be convicted as a principal to that crime solely upon the basis that he participated in a conspiracy by counseling, procuring, or commanding some other person to bring it about. To hold otherwise would be to expand the scope of accessorial liability beyond the legislative design.

We are advertent to certain decisions of this Court which have apparently found evidence of participation in a conspiracy suffi-

---

[7]Despite its force in the federal courts, the *Pinkerton* rule has never gained broad acceptance. It has been heavily criticized by legal commentators. *See, e.g.*, 56 Yale L.J. 371 (1947); 16 Fordham L. Rev. 275 (1947); Developments in the Law, *Criminal Conspiracy*, 72 Harv. L. Rev. 920, 994-1000 (1959). It was rejected by the draftsmen of the Model Penal Code and of the proposed new Federal Criminal Code. *See* LaFave and Scott, Criminal Law § 65 at p. 515, notes 15 and 16. Finally, it has been flatly rejected by the highest courts of both Massachusetts, *Commonwealth v. Stasiun*, 349 Mass. 38, 206 N.E. 2d 672 (1965), and New York, *People v. McGee*, 49 N.Y. 2d 48, 424 N.Y.S. 2d 157, 399 N.E. 2d 1177 (1979). It is true that under the Model Penal Code, § 2.06 (Proposed Official Draft, 1962), § 2.04 (Tent. Draft No. 1, 1953) persons who solicit, command, request, or provoke another to commit a crime may be found guilty of the crime itself. Our statues, however, G.S. 14-5 and G.S. 14-6, make such persons guilty and punishable only as accessories before the fact to the crime.

cient to hold a defendant who was absent from the scene of the crime guilty as a principal. *See, e.g., State v. Bindyke,* 288 N.C. 608, 220 S.E. 2d 521 (1975); *State v. Albert L. Carey,* 288 N.C. 254, 218 S.E. 2d 387, *death sentence vacated,* 428 U.S. 904 (1976); *State v. Anthony D. Carey,* 285 N.C. 497, 206 S.E. 2d 213 (1974); *State v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340 (1958). In each of these cases, however, this Court relied on language contained in prior decisions which concerned defendants who had in fact been present, actually or constructively, during the commission of the crimes with which they were charged. In those prior decisions, then, the distinction between an accessory before the fact and a principal simply did not arise.[8]

[7]   Yet the distinction is crucial. The co-conspirator rule — the well established proposition that the acts and declarations of one conspirator, made or done in the furtherance of or within the scope of the original conspiracy, may be imputed to other conspirators who were not present at the time — is a valid and useful *evidentiary* rule when it is used to establish the existence and extent of the conspiracy itself or the nature and extent of the accomplishment of the

---

[8]In *Bindyke,* the apparent basis for this Court's treatment of defendant as a principal on the charge of attempt to damage personal property by the use of an incendiary device (*See* G.S. 14-49 (b), (c)) was that defendant, although absent from the scene of the criminal attempt, nevertheless took part in a conspiracy to intimidate the owner of the property. 288 N.C. at 618-19, 220 S.E. 2d at 528. *Bindyke* relied upon *State v. Brooks,* 228 N.C. 68, 44 S.E. 2d 482 (1947) and *State v. Smith,* 221 N.C. 400, 20 S.E. 2d 360 (1942). In *Brooks,* however, all the defendants were active participants in an attempt to escape prison which resulted in the homicide of a prison guard. The conviction of those who did not actually fire the fatal shot was sustained upon grounds that they acted in concert with the one who did. 228 N.C. at 70-71, 44 S.E. 2d at 483. Similarly, in *Smith,* defendants were all present and participated in the acts which resulted in the burning of a truck. Their conviction for *conspiracy* to burn the truck was upheld against their contention that the common intent had been only to stop the truck on the ground (among others) that "each conspirator becomes liable for the means used by any of the conspirators in the accomplishment of the purpose *in which they are all engaged at the time.*" 221 N.C. at 405, 20 S.E. 2d at 363. (Emphasis supplied.)

The *Carey* cases concerned defendant-brothers who waited in an automobile while their confederates robbed a service station and shot and killed a station attendant. Although it appears from the reported facts of the cases that defendants could have been convicted of felony murder on the theory that they were constructively present at the robbery, aiding and abetting in its commission, *see, e.g., State v. Sellers,* 266 N.C. 734, 147 S.E. 2d 225 (1966), this Court upheld their conviction on the ground that "[w]hen a conspiracy is formed to commit a robbery or burglary, and a murder is committed by anyone of the conspirators in the attempted perpetration of the crime, each and all of the conspirators are guilty of murder in the first degree."

conspiracy's object. It means, in essence, that such acts and declarations of one co-conspirator are *admissible* against all. Thus applied *as a rule of evidence*, it does no more than permit the jury the logical inference that one who conspires to bring about a result intends the accomplishment of that result, or of anything which naturally flows from its attempted accomplishment. When one who so conspires is shown to have been present at the commission of the crime, contemplated by or a natural consequence of the original conspiracy, evidence of the conspiracy, including the conspiratorial acts and declarations of all the conspirators, may then be relevant to show his intent and participatory presence, *i.e.*, that he aided and abetted in the commission of the crime, or acted in concert with those who did, in which event he is substantively liable as a principal. Likewise, when the defendant-conspirator is shown to have been absent from the scene of the crime, evidence of the conspiracy may nevertheless be relevant to support the state's theory that the defendant participated as an accessory before the fact. In either case the co-conspirator rule is a rule of evidence, the fruits of which may be accepted or rejected by the jury in determining whether a defendant's partici-

---

*State v. Albert L. Carey*, 288 N.C. at 273, 218 S.E.2d at 399; *State v. Anthony D. Carey*, 285 N.C. at 504, 206 S.E. 2d at 218-19, *quoting from State v. Fox*, 277 N.C. 1, 17, 175 S.E. 2d 561, 571 (1970). In *Fox*, however, the Court noted that defendant, who waited outside in a truck while his associates robbed a couple in their home and committed a homicide, "was constructively present aiding and abetting . . . and, therefore, a principal" *Id.* Reliance in *State v. Anthony D. Carey, supra*, was also had upon *State v. Bell*, 205 N.C. 225, 171 S.E. 50 (1933), another case in which defendant waited in the getaway car while his confederates committed murder in the course of an attempted robbery.

In *Maynard*, defendant was not present at the scene of the murder and attempted robbery, but his life sentence for felony murder was upheld on the ground that he had conspired to rob the deceased and advised others to commit the robbery. As a conspirator he was held guilty of the substantive offense, apparently as a principal. 247 N.C. at 470-71, 101 S.E. 2d at 346. However, the cases cited in *Maynard* in support of this theory all involved defendants who had aided and abetted or acted in concert with the actual perpetrators of the crimes charged. *See State v. Kelly*, 243 N.C. 177, 90 S.E. 2d 241 (1955); *State v. Chavis*, 231 N.C. 307, 56 S.E. 2d 678 (1949); *State v. Bennett*, 226 N.C. 82, 36 S.E. 2d 708 (1946); *State v. Green*, 207 N.C. 369, 177 S.E. 120 (1934); *State v. Stefanoff*, 206 N.C. 443, 174 S.E. 411 (1934); *State v. Bell, supra*. It should also be noted that even if defendant in *Maynard* had been properly convicted of the homicide as an accessory before the fact, his sentence would have been the same, since G.S. 14-6 provides that an accessory before the fact to murder "shall be imprisoned for life."

Notice should also be had of *State v. Grier*, 30 N.C. App. 281, 227 S.E. 2d 126, *cert. denied*, 291 N.C. 177, 229 S.E. 2d 691 (1976), wherein the Court of Appeals felt bound by the decisions in *State v. Bindyke, supra*, and *State v. Albert L. Carey, supra*, and upheld the conviction as a principal of a defendant-conspirator who was not present at the scene of the crime charged.

pation in the criminal acts of another rises to the level of establishing his guilt as a principal *or* an accessory before the fact.[9]

In sum, a defendant's conspiratorial involvement may often be strong evidence of his liability *as a party* to a crime which arose out of the conspiracy. His status as a party — whether he is to be deemed a principal or an accessory before the fact — will nevertheless turn upon his presence at or absence from the place of the crime's commission.[10] His involvement in the conspiracy itself will not *alone* make him a principal, or, for that matter, an accessory either. *People v. McGee*, 49 N.Y. 2d 48, 424 N.Y.S. 2d 157, 399 N.E.

[9]This is the approach sanctioned by the drafters of the Model Penal Code:

"Conspiracy may prove command, encouragement, assistance or agreement to assist, etc.; it is evidentially important and may be sufficient for that purpose. But whether it suffices ought to be decided by the jury; they should not be told that it establishes complicity as a matter of law.

"This disposition is . . . faithful to the present American statutes, none of which declares the doctrine that conspirators are liable as such; the statutes on their face require 'inference that the offender has counseled or induced or encouraged the crime' (Cardozo, J., in *People v. Swersky*, 216 N.Y. at 476). However proper it may be to draw that inference from proof of a conspiracy, the jury ought to face in concrete cases whether or not, on the evidence, the inference is one that should be drawn." American Law Institute, *Model Penal Code* § 2.04 (3), Comment, pp. 23-24 (Tent. Draft No. 1, 1953).

Early cases applied the co-conspirator rule only as a rule of evidence but sometimes stated it so broadly that it sounded like a rule imposing substantive liability. *See United States v. Gooding*, 25 U.S. (12 Wheat.) 460 (1827); *State v. Poll*, 8 N.C. (1 Hawks) 442, 446 (1821) ("when a common design is proven, the act of one [but not the declarations] in furtherance of that design is evidence against his associate; it is in some measure the act of all . . . ."); *State v. George*, 29 N.C. (7 Ired.) 321 (1847) (acts *and* declarations of one criminal conspirator are considered the acts and declarations of all in the sense that they may be *received in evidence* against all if they were done or uttered in furtherance or in execution of the conspiracy); *State v. Dean*, 35 N.C. (13 Ired.) 63 (1851); *State v. Earwood*, 75 N.C. 210 (1876); *State v. Jackson*, 82 N.C. 565 (1880); 1 Greenleaf, Evidence, *compare* §§ 111, 113, and 233 (1844); Developments in the Law, *Criminal Conspiracy*, 72 Harv. L. Rev. 920, 988 (1959).

[10]"The law of conspiracy determines who is guilty, and of what, where a conspiracy is involved, but whether one found guilty under this law is a principal or accessory depends, at common law, on the law of parties . . . . The notion that, even where unchanged by statute, all parties to a felony are principals if they are conspirators, is clearly refuted by the cases. Thus although the felony is committed in pursuance of a concerted plan, those who are not present, or so near as to be able to render assistance at the time of perpetration, are not principals, but accessories before the fact." R. Perkins, "The Act of One Conspirator," 26 Hastings L.J. 337, 346, 347 (1974). (Citations omitted.)

State v. Small

2d 1177 (1979).[11] For reasons stated earlier and for those which follow, we conclude that the co-conspirator rule in this state is not and has never been intended to be taken as a separte rule of substantive liability which erases the common law distinctions among criminal parties. Any indications in our case law to the contrary are expressly disapproved.

In the companion cases of *State v. Haney,* 19 N.C. (2 Dev. & Bat.) 390 (1837), and *State v. Hardin,* 19 N.C. (2 Dev. & Bat.) 407 (1837), it appeared from the testimony of an accomplice and from other evidence that Haney, Hardin and the witness conspired to steal a slave; Haney then acted alone in convincing the slave to leave with him, and he and the slave subsequently joined up with the witness and Hardin. In Haney's trial, Haney objected to the admission of the accomplice's testimony concerning acts the accomplice had committed in Haney's absence. This Court ruled the testimony competent:

> "That one man should not be criminally affected by the acts or declarations of a stranger, is a rule founded in common sense, and resting on the principles of natural justice; and, therefore, a mere gratuitious assertion by any one, inculpating himself and others as fellow conspirators, should never be received as evidence against any person but himself. But where a privity or community of design has been established, the act of any one of those who have combined together for the same illegal purpose, done in furtherance of the unlawful design, is, in the consideration of law, the act of all." 19 N.C. (2 Dev. & Bat.) at 395.

Although this language, taken literally and out of context, might support the proposition that a conspirator could be regarded as a principal to a substantive offense committed in his absence by a co-conspirator in furtherance of the illegal design, such a notion was quickly dispelled by Chief Justice Ruffin's opinion in *State v. Hardin,*

---

[11]Conspiracy or preconcert, plus presence, does not automatically establish guilt as a principal in the second degree. It is possible, for example, that A and B agree (conspire) to commit a crime. A and B later visit the scene of the intended crime, but without the shared intent to commit it at the time. B nevertheless then commits the crime without A's approval or support, but in A's presence. A would not be a party to the crime. Similarly, conspiracy alone does not automatically trigger guilt as an accessory before the fact to a later substantive offense. The circumstances of the illegal agreement must also reveal that defendant procured, counseled, or commanded the subsequent offense. In most cases they will, but the matter is for the jury to decide.

State v. Small

_supra._ The defendant Hardin, absent during the actual taking of the slave by Haney, was nevertheless found guilty of larceny on the theory that he had conspired with Haney to commit the act. This Court reversed:

> "The evidence, we are satisfied, establishes a conspiracy between the accused persons and the witness, to steal or seduce negroes; and that those persons, or any of them, should carry them to a distance from their owners, and sell them for the common benefit. _But the concerting of such a plan does not make all the parties to it guilty as principals, upon a subsequent stealing of a slave by any one of them._ There must also be a concurrence and participation in the acts of taking and carrying away. This is ordinarily evinced by those acts being done by the prisoner himself, or by some other, when he is present, or so near that he can assist in the fact, or in the escape of him who actually perpetrates it. _Presence, therefore, in its legal sense, generally distinguishes the guilt of a principal from that of an accessory._
>
> . . . .
>
> "The common unlawful design to steal, does not make each of the parties a principal, unless, as Judge Foster says, p. 350, at the commission of the crime 'each man operates in his station _at one and the same instant,_ towards the same common design; as where one is to commit the fact, and others to watch at proper distances, to prevent surprise, or to favour escape, or the like." 19 N.C. (2 Dev. & Bat.) at 412, 416. (Former emphases supplied; latter emphasis original.)[12]

---

[12]Chief Justice Ruffin's quote is from M. Foster, Crown Law *350 *1762). On the same page cited by Ruffin, we find the statement: "In order to render a person an accomplice and a principal in a felony, he must be aiding and abetting at the fact, or ready to afford assistance if necessary." This section of Foster's work deals generally with situations in which those present at the scene of a crime, but who do not actually commit the criminal deed, may nevertheless be held guilty as principals (in the second degree) because of their unlawful preconcert and shared intent with the actual perpetrator.

See further _State v. Bryson,_ 173 N.C. 803, 92 S.E. 698 (1917), where defendant was convicted of second degree murder when all the evidence showed him to be an accessory before the fact to first degree murder. A majority of the Court found no _prejudicial_ error and refused to remand for resentencing because, it reasoned,

State v. Small

Chief Justice Ruffin's opinion for the Court in *Hardin* establishes beyond question that even though one conspires to commit a crime, he may not be held liable as a principal to its subsequent commission if he was not actually or constructively present at the criminal act. "Presence . . . in its legal sense" is an essential ingredient of the status of principal. *Id.* at 412. When such presence is lacking, a party to a felony may only be punished as an accessory before the fact. This important rule of the common law, affirmed in the *Hardin* decision and long codified in G.S. §§ 14-5, 14-6 and their predecessors, has never been directly questioned in our case law. Moreover, *Hardin* itself has never been overruled and it remains the law of this state.

As noted above, *see* note 8, *supra*, and accompanying text, each of the decisions which have apparently predicated liability as a principal upon no more than a showing of defendant's involvement in a conspiracy to effect the substantive crime (or one related to it) drew precedential support from language in prior cases involving defendants who were in fact present at the criminal act. An analysis of these earlier cases, and of *their* cited precedents, reveals two conceptually distinct statements of rules which were ultimately taken out of context of the cases which generated them and read literally to support the notion that conspiratorial involvement itself opens a route to liability as a principal.

The first, an agency rationale of the coconspirator rule of evidence, was itself derived from notions of civil accountability.[12.1]

---

defendant's sentence (twenty years) was less severe than if he had been convicted as an accessory before the fact (mandatory life sentence) and no more severe than the sentence given the principal perpetrator (twenty years) who had pled guilty to second degree murder. Later cases make it clear that one who is not present at the actual commission of the crime but who counsels or procures its commission is guilty, if at all, only as an accessory. *State v. Furr*, 292 N.C. 711, 235 S.E. 2d 193 (1977), *cert. denied*, 434 U.S. 924 (1977) (defendant's murder conviction reversed when evidence showed that he was, at most, an accessory before the fact to his wife's murder); *see also State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970).

[12.1] In civil law although conspiracy itself is not actionable, a civil claim may be maintained against *all* conspirators for damages resulting from overt acts committed pursuant to the conspiracy by one or more conspirators. *Burton v. Dixon*, 259 N.C. 473, 131 S.E. 2d 27 (1963); *Burns v. Oil Corporation*, 246 N.C. 266, 98 S.E. 2d 339 (1957). The basis for civil liability of a conspirator who committed no overt act resulting in damage "bears close resemblance to the basis of liability of a principal

Although the rule was consistently *applied* to sustain the admissibility of the acts and declarations of one conspirator against other co-conspirators as *evidence* of the guilt of all, it was often *stated* in extraordinarily broad terms. It is not surprising, then, that its use in the criminal context could be misleading. "Everyone who does enter into a common purpose or design is equally deemed in law a party to every act which has been before done by the others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design." 1 Greenleaf on Evidence § 111 (1844). This principle was quoted verbatim in *State v. Jackson, supra,* 82 N.C. 565, 568 (1876), a conspiracy case in which the co-conspirator rule was invoked to sustain the admission against defendant of evidence of the acts and declarations of his confederate. It was quoted again in *State v. Ritter,* 197 N.C. 113, 147 S.E. 733 (1929), a conspiracy case in which we find this additional paraphrase of the principle by Chief Justice Stacy: "One who enters into a criminal conspiracy . . . forfeits his independence and jeopardizes his liberty, for, by agreeing with another or others to do an unlawful thing, he thereby places his safety and security in the hands of every member of the conspiracy." *Id.* at 115, 147 S.E. at 734. This statement, along with the original Greenleaf quote, then found a home in *State v. Williams,* 216 N.C. 446, 5 S.E. 2d 314 (1939), a homicide case wherein defendants conspired to rob the deceased and then all acted together in the perpetration of the fatal robbery. The opinion in *Williams,* however, did note that the substantive principle applicable to the facts of that case was that "where two or more persons aid and abet each other in the commission of a crime, *all being present,* all are principals and equally guilty." *Id.* at 448, 5 S.E. 2d at 315. (Emphasis supplied.) The *Williams* decision was subsequently cited in *State v. Smith,* 221 N.C. 400, 20 S.E. 2d 360 (1942), as support for general proposition that "if a number of persons combine or conspire to commit a crime . . . each is *responsible* for all acts committed by the others in the execution of the common purpose which are a natural or probable consequence of the

under the doctrine of *respondeat superior* for the torts of his agent." *Reid v. Holden,* 242 N.C. 408, 415, 88 S.E. 2d 125, 130 (1955). The doctrine of *respondeat superior* is, of course, not generally available in the criminal law to hold principals liable for the crimes of their agents. As we demonstrate in the text, criminal liability is generally personal to the defendant; he may be liable, if at all, as a conspirator (even if the object of the conspiracy is not accomplished), an accessory, or a principal perpetrator.

unlawful combination . . ." *Id.* at 405, 20 S.E. 2d at 364. (Emphasis supplied.) The proposition was applied in *Smith* to defendants who were all present and acted together at the scene of the crime, but it was then taken out of this context and quoted in *State v. Bindyke*, *supra*, 288 N.C. at 618-19, 220 S.E. 2d at 528, for the proposition that a defendant who was absent from a criminal attempt could nevertheless be liable as a principal to the attempt on the ground that the substantive crime naturally resulted from a conspiracy which defendant had promoted. We thus see in *Bindyke* the fruition of a rule of substantive liability derived from previous statements concerning a rule of evidence.

The second line of statements which eventually caused confusion conceptually had nothing to do with the agency basis of the co-conspirator rule, but rested upon established common law principles of accomplice liability. To illustrate, we examine those cases in which evidence of preconcert or conspiracy was used to show that defendant's presence at the scene of the crime was with criminal intent and that he therefore was liable as a principal (in the second degree) to the criminal act committed by his associates. In *State v. Simmons*, 51 N.C. (6 Jones) 21 (1958), it appeared that defendants acted in concert in committing the fatal assault. The trial court had instructed the jury that if they found the defendants had pursued the deceased with the common understanding "that they were to aid and assist each other, both being present at the commission of the act, each would be responsible for the acts of another." *Id.* at 23. This Court approved the instruction, noting: "It is a well established principle, that where two agree to do an unlawful act, each is responsible for the act of the other, provided it be done in pursuance of the original understanding, or in furtherance of the common purpose." *Id.* at 24-25. *Simmons* was subsequently relied upon in *State v. Gooch*, 94 N.C. 987 (1886), another case involving evidence of defendants acting together with a common purpose. Headnote 14 to the original report of *Gooch* reveals, however, a somewhat broader proposition than that stated in *Simmons*: "Where two or more conspire to do an unlawful act, although the act be done by one, yet they are all equally principals." Nevertheless, it is apparent from the factual circumstances of both *Simmons* and *Gooch* that the statements contained therein were intended to apply only in cases where defendants were present at the crime's commission. This point is clarified somewhat in *State v. Holder*, 153 N.C. 606, 607, 69 S.E. 66, 67 (1910): "The proof of conspiracy is necessary only to fix

liability upon members of a crowd or mob *who are present* but not shown to have committed the illegal act. In such case, if the common design or conspiracy is shown, all parties are liable." (Emphasis supplied.)

In *State v. Donnell*, 202 N.C. 782, 164 S.E. 352 (1932), this Court was faced with a trial court instruction which apparently incorporated the principle stated in *Holder*. In *Donnell*, the evidence showed that defendant had actively participated with another in the robbery which resulted in homicide. The trial court instructed the jury to find both defendants guilty of felony murder if they found that one of the defendants had killed the deceased "while in the attempt to carry out the unlawful purpose" of the conspiracy to rob. Citing *State v. Holder, supra,* this Court held the instruction free from "reversible error," noting that "*[w]ithout regard to the existence or absence of a conspiracy . . .* where two persons aid and abet each other in the commission of a crime, both being present, both are principals and equally guilty." *Id.* at 784, 164 S.E. at 353.

After the decision in *Donnell* there ensued a series of felony murder cases in which the prosecution relied upon the theory that if defendants had conspired to commit a felony, and a murder were committed by any one of the conspirators in the perpetration or attempted perpetration of the felony, each and all of the defendants would be guilty of homicide. In each of these cases, the state's theory was approved by this Court as a "correct proposition of law." *See State v. Bell*, 205 N.C. 225, 171 S.E. 50 (1933); *State v. Stefanoff*, 206 N.C. 443, 174 S.E. 411 (1934); *State v. Bennett*, 226 N.C. 82, 36 S.E. 2d 708 (1946). In each of these cases, however, all the defendants were in fact present at the scene of the murder. The *additional* evidence of their conspiracy and concerted design to commit the underlying felony was clearly sufficient to establish their liability as principals.

The same cannot be said of *State v. Maynard, supra,* 247 N.C. 462, 101 S.E. 2d 340, another case in which the conspiracy theory arguably approved in *Donnell* was applied. There the evidence disclosed that defendant was not even constructively present at the commission of the homicide, although he had conspired and participated in the preparations for the commission of the underlying felony. This Court nevertheless sustained his conviction as a principal to first degree murder upon the authority of the "correct principle of law" represented by the decisions in *Bennett, Stefanoff, Bell,* and *Donnell, supra.* 247 N.C. at 469-70, 101 S.E. 2d at 345-46. This

"correct principle" — *i.e.*, that when a homicide occurs in the course of the commission of a felony, all those who conspired to commit the felony are liable in effect as principals to first degree murder — was then reiterated in *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970). *Fox* was in turn relied upon in *State v. Albert L. Carey, supra*, 288 N.C. 254, 218 S.E. 2d 387, and in *State v. Anthony D. Carey, supra*, 285 N.C. 497, 206 S.E. 2d 213, both cases which applied the principle without regard to defendant's absence or presence at the occurrence of the felony murder.

From the foregoing, it can be seen that the erroneous idea that a conspirator automatically becomes liable as a *principal* to all crimes committed as a result of or in furtherance of the illegal agreement has largely resulted from too broad a reading of case law statements which either (1) discussed the application of the co-conspirator rule as a rule of evidence, or (2) applied established principles of accomplice liability to evidence of conspiracy and preconcert. It is likely, moreover, that the more general notion expressed in *Pinkerton v. United States, supra*, 328 U.S. 640, that a defendant's involvement in a conspiracy *ipso facto* makes him *liable as a party* to all substantive offenses committed by others in furtherance of the conspiracy, likewise derives from a misreading of similar sources.[13] "But it is repugnant to our system of jurisprudence, where guilt is generally personal to the defendant . . . to impose punishment, not for the socially harmful agreement to which the defendant is a party, but for substantive offenses in which he did not participate." *People v. McGee, supra*, 49 N.Y. 2d 48, 58, 424 N.Y.S. 2d 157, 162, 399 N.E. 2d 1177, 1182 (rejecting the *Pinkerton* approach); *see also Commonwealth v. Stasiun, supra*, n. 7, 349 Mass. 38, 206 N.E.

---

[13]It has been noted that, prior to *Pinkerton*, the federal courts applied the dogma that the act of one conspirator is the act of all when committed within the scope of the conspiracy *only* (1) to establish as the act of all the "overt act" of one; (2) to show the extent and duration of the conspiracy; or (3) to connect all the defendants with the crime charged. Prior to *Pinkerton*, "the doctrine had not, by its own force, supported an imposition of vicarious liability for substantive offenses committed by co-conspirators." 56 Yale L.J. 371, 375-76 (1947). For a similar conclusion, *see* Developments in the Law, *Criminal Conspiracy*, 72 Harv. L. Rev. 920, 993-94 (1959). Another commentator has found that the vast majority of the decisions cited in support of the majority's ruling in *Pinkerton* "are cases which, upon examination, prove to contain evidence of definite participation in the substantive offenses by all parties convicted . . . . The conspirators convicted in these decisions are burdened with the accoutrements of accomplices." 16 Fordham L. Rev. 275, 278 (1947). In *People v. McGee, supra*, note 7, the same point was noted by the New York Court of Appeals as to previous New York decisions.

State v. Small

2d 672 (also rejecting the *Pinkerton* analysis).

We have seen that, as a matter of evidence, the acts and declarations of one conspirator, made in furtherance of the conspiracy, are regarded as the acts and declarations of all. But that rule, derived from the civil law of agency, should not be extended beyond the limits of its logic to impose substantive liability solely on the basis of participation in a prior criminal agreement. Otherwise, the distinction between conspiracy and the substantive offense which results from it would disappear.[14] Evidence of a defendant's involvement in a conspiracy may well be sufficient, in a proper case, to enable the jury to infer the elements of defendant's guilt as a party to the later substantive offense. But participation in an illegal agreement does not itself establish, as a matter of law, criminal liability for crimes which result from furtherance of the agreement.

To summarize our holding today:

(1) Evidence sufficient to show defendant's involvement in a criminal conspiracy does not itself establish defendant's liability as a party to the substantive felony committed as a result of the conspiracy; it is reversible error for the court to so instruct the jury.

(2) Such evidence will nevertheless always be *relevant* to submit to the jury as proof of defendant's complicity in the substantive felony charged, in that it tends to show either (a) defendant, though absent at the felony's commission, nevertheless counseled, procured,

---

[14]We have consistently held that the crime of conspiracy is a separate offense from the accomplishment or attempt to accomplish the intended result. Thus, the offense of conspiracy does not merge into the substantive offense which results from the conspiracy's furtherance. A defendant may be properly sentenced for both offenses. *See, e.g., State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964); *State v. Brewer*, 258 N.C. 533, 129 S.E. 2d 262 (1963). It would be otherwise, however, were a defendant convicted of the substantive offense solely on the basis of his participation in the conspiracy. In such a case, proof of guilt of the substantive offense would necessarily include (indeed, would be equivalent to) proof of involvement in the conspiracy, and the defendant could not be properly punished both for conspiracy and the separate offense. *See, e.g., State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666 (1972), discussing the rationale of merger of the underlying felony into the homicide charge in cases of felony murder. *See also State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979), and *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976), pointing out that the merger requirement may depend upon the theory of the case submitted by the judge to the jury. It should be noted that in the instant case, Judge Smith instructed the jury to find defendant guilty of murder upon proof that defendant had conspired to commit the murder. Given this theory of the case (a theory we reject today), the offense of conspiracy merged into the offense of murder. Accordingly, Judge Smith arrested judgment on the conspiracy conviction.

State v. Small

or commanded its commission, or (b) that defendant, present at the scene of the felony, shared in the criminal intent of the actual perpetrators and thus aided and abetted in the felony's occurrence or acted in concert with those who committed it. What the evidence does in fact show, however, is for the jury to decide.

(3) Unless and until the legislature acts to abolish the distinction between principal and accessory, a party to a crime who was not actually or constructively present at its commission may at most be prosecuted, convicted and punished as an accessory before the fact.

In the case before us, there is plenary evidence that the brutal murder of the deceased was committed at defendant's direction. From all the evidence, however, defendant was not present, actually or constructively, during the homicide's commission. Defendant's status as a party to the crime is at most, therefore, that of an accessory before the fact. He may not be punished as a principal.

The question remains as to the scope of relief to which he is entitled upon this appeal.

[8] By returning a verdict of guilty of first degree murder, the jury necessarily found that the evidence showed beyond a reasonable doubt all those elements instructed upon by the trial judge in his final mandate, *i.e.*, (1) that the deceased was intentionally killed with malice, premeditation, and deliberation; (2) that the person(s) who killed the deceased had previously agreed with defendant that the murder be committed; (3) that at the time of this agreement, both the defendant and the murderer(s) intended that the agreement's fatal objective be effected; and (4) that the murder itself was done in the furtherance of the agreement. In substantive effect, then, the jury found from the evidence that the murder of Evelyn Small was the intended product of the agreement between defendant and her killer(s). The *only* such agreement shown by the evidence, however, was that series of transactions whereby defendant approached Johnson and Lowery and successfully solicited their services to commit the fatal deed in his absence. Thus, the circumstances of the agreement itself reveal beyond contradiction that defendant "procured" and "counseled" the commission of the offense with which he is charged. Viewed in this light, the verdict *as found by the jury* clearly establishes as a matter of law defendant's guilt as an accessory before the fact to first degree murder.

State v. Small

**[9]** The record further reveals that defendant was indicted, not as an accessory before the fact, but upon the charge of the principal felony of first degree murder. At the time of the return of the indictment by the grand jury on 4 December 1978, it was the law in this state that one indicted for the principal felony could nevertheless be convicted upon that indictment as an accessory before the fact. *See* G.S. 14-5; *State v. Holmes,* 296 N.C. 47, 249 S.E. 2d 380 (1978), and cases cited therein. Effective 1 October 1979, however, G.S. 14-5.1 provides that any person "who *shall be charged* with the principal felony in an indictment . . . may not be convicted as accessory before the fact to the principal felony on the same indictment. . . . " (Emphasis supplied.) We discern in the statute's use of the words "shall be charged" a clear legislative intent that the change in procedure mandated by G.S. 14-5.1 apply prospectively only, *i.e.,* to those cases in which the indictment itself is returned on or after 1 October 1979. Defendant therefore is not entitled to the procedural benefits embodied in the new statute. *State v. Cameron,* 284 N.C. 165, 200 S.E. 2d 186 (1973), *cert. denied,* 418 U.S. 905 (1974); *State v. Pardon,* 272 N.C. 72, 157 S.E. 2d 698 (1967). His conviction as an accessory before the fact to the crime of murder, manifest in the jury's verdict, may thus be upheld. His punishment as an accessory before the fact must, however, proceed according to the limitations of G.S. 14-6, which provides for a mandatory sentence of life imprisonment upon conviction as an accessory before the fact to murder.

## II

**[10]** Defendant assigns as error the failure to arraign him before trial in accordance with G.S. 15A-941.[15] The record reveals that there was an arraignment before Judge McKinnon on 15 December 1978. The clerk's minutes, which are included without objection or challenge as to their accuracy, and which as part of the record on appeal, reflect that on that day "[t]he defendant was brought to Court for the purpose of arraignment and the plea was not guilty." Defendant argues that the record must reflect that at arraignment the charges were read or summarized to defendant by the prosecutor as required by the statute. We disagree. Defendant, as appellant, has

[15]§ 15A-941. *Arraignment before judge* — Arraignment consists of bringing a defendant in open court before a judge having jurisdiction to try the offense, advising him of the charges pending against him, and directing him to plead. The prosecutor must read the charges or fairly summarize them to the defendant. If the defendant fails to plead, the court must record that fact, and the defendant must be tried as if he had pleaded not guilty.

the burden on appeal to show that error was made. We will not presume that G.S. 15A-941 was not complied with when the record shows that an arraignment took place and defendant, duly represented by counsel, entered a plea of not guilty. If defendant was not properly informed of the charges against him at arraignment, it was his duty to object at that time and to have appropriate entries made in the record to show the basis for the objection. Defendant here did neither. The record reveals simply that on 2 April 1979, just before the jury was selected, the following entry was made:

"ARRAIGNMENT

No record of the defendant being arraigned and entering a plea. No record of his waiving arraignment and entering a plea. Defendant tried without pleading to the charge, the defendant contends.
EXCEPTION No. 1"

The entry does not appear to be factually correct. It certainly does not suffice to preserve defendant's complaint about what might have occurred when the arraignment actually took place on 15 December 1978. Furthermore, in *State v. McCotter*, 288 N.C. 227, 234, 217 S.E. 2d 525, 530 (1975), we found no prejudicial error when the record was silent as to whether an arraignment had taken place but the trial was conducted throughout as if defendant had been arraigned and had pleaded not guilty. So it is here. This assignment of error is overruled.

Defendant assigns as error the introduction of evidence regarding his past acts of misconduct.

[11]　The first such evidence was offered during the testimony of the state's first witness, Earl Locklear. Locklear was describing a meeting between him, Paul Lowery, and defendant in the early morning hours in defendant's store. The central topic of conversation at the meeting was the defendant's request of Small and Lowery to kill defendant's wife. The meeting lasted an hour. Locklear described the conversation between the men in great detail. He testified that when he entered the store defendant was lying on a mattress in a small storage room "bragging about the women he had made love to on the mattress." The following testimony then occurred:

"Q. What did he say about that?

MR E. BRITT: Object. Move to strike.

THE COURT: Overruled.

Q. (BY MR. J. BRITT) Go ahead.

A. Well, he said he had made love to them "dog fashion," legs straight up in the air.

Q. What else?

A. Blow jobs.

Q. All right.

MR. E. BRITT: Object. Move to strike.

THE COURT: All right. Let's be quiet. Overruled.
   EXCEPTION No. 4"

Later, on cross-examination, Locklear testified:

"We went into the back room and James was bragging about having sex with women, that is what he told me. I told you that then James Small and Paul Lowery talked about the killing of his wife and that as such I told him I wouldn't have any part of it."

There was no objection to the evidence tending to show that defendant had, generally, had sex with other women. Defendant concedes in his brief that such testimony might be competent to show motive. *See State v. Burney*, 215 N.C. 598, 3 S.E. 2d 24 (1939). Defendant, however, strenuously urges that it was error to permit evidence which described in some detail the nature of defendant's sexual encounters with the other women. He relies on *State v. Rinaldi*, 264 N.C. 701, 142 S.E. 2d 604 (1965), in which defendant, having been convicted of murdering his wife, was awarded a new trial because the state offered evidence that defendant had made homosexual advances to a state's witness whom defendant had sought to hire to do the murder. The Court said, "The jury should not be prejudiced to defendant's detriment by evidence tending to prove that he is a moral degenerate, prepared to commit the abominable and detestable crime against nature, a felony." *Id.* at 705, 142 S.E. 2d at 67.

It is, of course, error for the state "in a prosecution for a particular crime [to] offer evidence tending to show that the accused has committed another distinct, independent, or separate offense" when the *sole* purpose of the evidence is, generally, to show that the defendant is a bad person and, therefore, predisposed to commit criminal acts generally. *State v. McClain*, 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954). In the testimony here complained of, only the reference to "blow jobs" could conceivably amount to evidence tending to show that defendant had committed a prior criminal act. *See State v. Adams*, 299 N.C. 699, 264 S.E. 2d 46 (1980). Nonetheless we believe that it was error to permit this testimony detailing the manner in which defendant engaged in sexual relations with other women. We are satisfied, however, that given the admissibility of the fact that defendant had sexual relations with other women, the outcome of the trial would not have been different had this bit of embellishment not been admitted. There is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial..." G.S. 15A-1443. The embellishment does not necessarily, in today's society at least, make defendant out to be a "moral degenerate" as the court described the effect of the testimony in *Rinaldi* dealing with homosexual advances. This assignment of error is, therefore, overruled.

**[12]** Defendant next assigns as error the admissibility of similar evidence regarding defendant's sexual relations with other women and other forms of misconduct brought out on cross-examination of defendant himself. In each instance the defendant denied committing any of the acts. We see no error in this procedure. A defendant who takes the stand in his own behalf may be cross-examined for purposes of impeachment concerning prior criminal acts or specific acts of misconduct so long as the questions by the prosecutor are asked in good faith. *State v. Mayhand*, 298 N.C. 418, 259 S.E. 2d 231 (1979). In the one instance in which the prosecutor appeared not to be acting in good faith because he repeated an inquiry concerning an act of misconduct which defendant had already denied, the trial judge sustained defendant's objection and instructed the jury to disregard the question. We find no error, consequently, in this aspect of the trial.

**[13]** Defendant next assigns as error the admission of testimony given by defendant on cross-examination regarding the results of a

polygraph examination administered to defendant before trial.[16] Before trial defendant and the state stipulated that defendant would submit to a polygraph examination. The stipulation further provided that the polygraph operator's written report could be introduced into evidence at the time of the operator's testimony and that if the operator was unavailable to testify then the written report itself could be introduced. If, however, according to the stipulation, the results of the polygraph were indefinite, then the operator would not be called to testify nor would the polygraph examination itself be mentioned either directly or indirectly or alluded to in any way during the trial. The polygraph result, itself, does not appear in the record. On direct examination, however, defendant testified that he had gone to the police department for the purpose of taking a polygraph test but was told to go back home. He then said that he would have voluntarily taken a polygraph test if it had been offered to him.

On cross-examination defendant testified, without objection, that the state had given him two polygraph tests. He also gave testimony, to which no assignment of error on appeal has been directed, as follows: During one of the tests he took a penicillin tablet, but he had not been instructed by the operator not to take any pills during the test. Nevertheless he was taken, pursuant to his pre-trial stipulation, to a hospital to have his stomach evacuated after having taken the pill; thereafter the operator immediately scheduled another polygraph examination. On cross-examination with regard to the second examination defendant was asked whether he "flunked it." An objection to this question was sustained and the jury instructed not to consider it. The following then transpired:

> "Q. (By Mr. J. Britt) You know that your test showed deception all the way through; don't you, Small?
>
> MR. KIRKMAN: Objection.
>
> THE WITNESS: No, I do not.
>
> THE COURT: Overruled.
>
> Q. (By Mr. J. Britt) You have not seen a copy of the report given to your lawyers?

---

[16]The general rules for admissibility of such evidence are set out in *State v. Milano*, 297 N.C. 485, 256 S.E. 2d 154 (1979). Generally the results of polygraph examinations are inadmissible absent a stipulation to the contrary by the parties.

A. I was told I didn't do too well on it.

EXCEPTION NO. 33"

Later during defendant's cross-examination concerning the second polygraph examination the following occurred:

"Q. And that is the one that you say you showed deception on the test in; is that correct?

MR. E. BRITT: Objection to *what he said.*

THE COURT: Overruled.

Q. (By Mr. J. Britt) Isn't it?

A. Yes, sir.

EXCEPTION NO. 45" (Emphasis supplied.)

First, we note that defendant neither objected to the question, "You have not seen a copy of the report given to your lawyers?" nor did he move to strike his answer, "I was told I didn't do too well on it." Consequently defendant has not properly preserved his Exception No. 33. "In case of a specific question, objection should be made as soon as the question is asked and before the witness has time to answer. Sometimes, however, inadmissibility is not indicated by the question, but becomes apparent by some feature of the answer. In such cases the objection should be made as soon as their inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it." *State v. Patterson,* 284 N.C. 190, 196, 200 S.E. 2d 16, 21 (1973), *quoting* 1 Stansbury's North Carolina Evidence § 27 (Brandis Rev. 1973) (hereinafter North Carolina Evidence); *see* App. R. 10 (b) (1).

Second, defendant's later objection to the question, "And that is the one that you say you showed deception on the test in; is that correct?", was not on the ground that the question asked for polygraph results, but on the ground that the witness was being asked to repeat former testimony. If the objection was properly overruled on this ground, another ground cannot be assigned to it on appeal. *State v. Jones,* 293 N.C. 413, 238 S.E. 2d 482 (1977); 1 North Carolina Evidence 72. Mere repetition should not generally be permitted, *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966); but there are circumstances (*e.g.,* former testimony was confusing or inaudible) where repetition is appropriate. Such circumstances often exist on

State v. Small

cross-examination where the examiner may wish to test the witness' consistency, perception, memory, etc., or to bring out further details of the witness' direct testimony. The extent to which such cross-examination may be permitted is a matter which, to some extent, rests in the trial judge's discretion so long as the discretion is not exercised to violate a defendant's right of confrontation. *See generally* 1 North Carolina Evidence § 35, and particularly p. 108, n. 51. Here the question was obviously asked to clear up any confusion that might have existed as to which polygraph test the witness was referring. It was well within the trial court's discretion to permit the answer for this purpose. Defendant's objection on the ground assigned, therefore, was properly overruled.

There is a more fundamental reason why defendant may not now complain of the state's cross-examination regarding the polygraph. Defendant's direct testimony on the subject rendered admissible the state's cross-examination. Evidence which might not otherwise be admissible against a defendant may become admissible to explain or rebut other evidence put in by the defendant himself. *State v. Black*, 230 N.C. 448, 53 S.E. 2d 443 (1949); *see also State v. Patterson, supra*, 284 N.C. 190, 200 S.E. 2d 16. Here on direct examination defendant testified in such a way as to leave the false impression that the state had refused to accept his offer to submit to a polygraph examination. It was proper for the state, therefore, on cross-examination to show that, in fact, defendant had been given a polygraph. The state was not, however, required to stop there. Had it done so, the jury might have been left with the impression that the state, bearing the burden of proof, did not offer the results of the polygraph because they were unfavorable to it. Both the state and defendant are entitled to a fair trial. Defendant by first injecting the subject of the polygraph into the trial in a manner designed to mislead the jury invited the very cross-examination of which he now complains. His assignments of error directed to this cross-examination are for this additional reason overruled.

In defendant's trial we find no error except the submission to the jury of the question of defendant's guilt of murder in the first degree and the sentence of death imposed as a result of defendant's conviction of that crime. The matter is remanded, therefore, to the Superior Court of Robeson County for the entry of a verdict of guilty of accessory before the fact to murder, *State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977), and the imposition of a sentence of life

imprisonment. *State v. Matthews,* 295 N.C. 265, 245 S.E. 2d 727 (1978). Defendant's presence for these entries shall not be required. *Id.*

Error and remanded.

Justice BROCK did not participate in the consideration and decision of this case.

Justice HUSKINS dissents.